BELL V. STATE

COURT OF APPEALS

SECOND DISTRICT OF TEXAS

FORT WORTH

NO. 2-03-214-CR

DANNY LEE BELL, SR. APPELLANT

A/K/A DANNY LEE BELL

V.

THE STATE OF TEXAS STATE

------------

FROM THE 372ND DISTRICT COURT OF TARRANT COUNTY

------------

OPINION

------------

I. Introduction

Appellant appeals from  his conviction by a jury for the offense of murder.  In six points, appellant argues that the trial court erred by (1) failing to include in its charge to the jury an instruction on causation as defined by section 6.04(a) of the penal code, (2) including in its charge to the jury an instruction on the law of parties as defined by section 7.02(a)(2) of the penal code, (3) submitting a supplemental charge to the jury on the issue of transferred intent under section 6.04(b) of the penal code, (4) denying appellant’s motion to suppress his written statement, (5) denying appellant’s motion to suppress evidence seized from his car, and (6) including in its judgment an affirmative finding of the use of a deadly weapon.  We affirm.  

II. Background Facts

On January 29, 2000, appellant and his girlfriend Amy Burdick went to the Pink Poodle lounge in Fort Worth.  While they were there, appellant’s father, who was also at the Pink Poodle that night, got into an argument with Kevin Murphy, who worked at the lounge.  In the early morning hours of January 30, Kevin Murphy and James Thompson, a customer, left the Pink Poodle and started walking across the parking lot toward the cafe next door.  Appellant and Burdick were in the parking lot at the time, and Burdick got into an argument with Thompson.  Appellant and Burdick then got into appellant’s car, a maroon Ford Thunderbird.  Appellant was driving and Burdick was in the passenger seat.  They sped through the parking lot, hitting Thompson.  They left the parking lot without stopping to help Thompson, who later died of his injuries.   Cathy Collins had known appellant for around twenty years or more.  Collins and her friend Rhonda Burcham lived in a house near the Pink Poodle and were at the Pink Poodle that night.  Both later told the police that appellant and Burdick stopped by their house that night and that appellant told them that he had meant to hit Murphy with his car.  Burcham told the police that appellant said that he had meant to hit Murphy but had hit Thompson instead.   Fort Worth police arrested appellant at his aunt’s home in Tolar, Texas ten days later.  Fort Worth police found appellant’s car in nearby Somervell County.  In a statement to the police, appellant said that on January 30, Burdick and Thompson had argued in the parking lot of the Pink Poodle.  Appellant stated that he was just trying to get Burdick out of there and that he drove fast through the parking lot to avoid a confrontation between Burdick and Thompson.  According to appellant, as he drove past Thompson, Burdick opened the passenger door, hitting Thompson.  She then yelled, “Go, go, go. I got the mother******.”  Appellant stated that he did not intend to hit Thompson.  Appellant pled not guilty to one count of murder. 

Before his trial, appellant filed several motions to suppress the evidence seized as a result of his arrest, his oral and written statements, and the physical evidence obtained from his car.  The trial court denied appellant’s motions.  A jury found him guilty of murder and assessed his punishment at life imprisonment.  Because appellant’s fourth and fifth points are potentially dispositive of his appeal, we will address those points first.    

III. Appellant’s Written Statement

In his fourth point, appellant argues that the trial court erred by denying his motion to suppress his written statement.  He argues that his statement resulted from an illegal arrest based on a warrant that lacked probable cause, resulted from violations of articles 15.18 and 15.19 of the code of criminal procedure, and was involuntary.

We review a trial court's ruling on a motion to suppress evidence under a bifurcated standard of review.  
Carmouche
 
v. State
, 10 S.W.3d 323, 327 (Tex. Crim. App. 2000); 
Guzman v. State,
 955 S.W.2d 85, 89 (Tex. Crim. App. 1997).  In reviewing the trial court's decision, we do not engage in our own factual review.  
Romero v. State,
 800 S.W.2d 539, 543 (Tex. Crim. App. 1990); 
Best v. State,
 118 S.W.3d 857, 861 (Tex. App.—Fort Worth 2003, no pet.).  The trial judge is the sole trier of fact and judge of the credibility of the witnesses and the weight to be given their testimony. 
 State v. Ross,
 32 S.W.3d 853, 855 (Tex. Crim. App. 2000); 
State v. Ballard, 
987 S.W.2d 889, 891 (Tex. Crim. App. 1999).   Therefore, we give almost total deference to the trial court's rulings on (1) questions of historical fact and (2) application-of-law-to-fact questions that turn on an evaluation of credibility and demeanor. 
 Johnson v. State,
 68 S.W.3d 644, 652-53 (Tex. Crim. App. 2002); 
State v. Ballman
, 157 S.W.3d 65, 68 (Tex. App.སྭFort Worth 2004, pet. filed);  
Harrison v. State, 
144 S.W.3d 82, 85 (Tex. App.—Fort Worth 2004, pet. granted);
 Best,
 118 S.W.3d at 861-62.  However, when the trial court’s rulings do not turn on the credibility and demeanor of the witnesses, we review de novo a trial court's rulings on mixed questions of law and fact.  
Johnson,
 68 S.W.3d at 652-53. 

A. Arrest Warrant Affidavit

Appellant argues that the affidavit drafted by Detective Jose Antonio Hernandez in support of the warrant for appellant’s arrest fails to state sufficient facts from which a neutral and detached magistrate could determine that probable cause existed to believe that appellant murdered Thompson.  An affidavit supporting an arrest warrant “must provide the magistrate with sufficient information to support an independent judgment that probable cause exists to believe that the accused has committed an offense.”  
Ware v. State
, 724 S.W.2d 38, 39-40 (Tex. Crim. App. 1986).  Mere conclusions in the affidavit are not sufficient.  
Id
. at 40.  

For an arrest to be justified under the Fourth Amendment, there must be probable cause to believe that a person has engaged in or is engaging in criminal activity.  
Ballman
, 157 S.W.3d at 68.  We apply a deferential standard of review when reviewing the propriety of an arrest with a warrant.  
See Swearingen
 
v. State
, 143 S.W.3d 808, 811 (Tex. Crim. App. 2004); 
Davis
 
v. State
, 144 S.W.3d 192, 196-97 (Tex. App.སྭFort Worth 2004, pet. ref’d) (op. on reh’g).  We look to the “totality of the circumstances” regarding the information contained in the affidavit.  
Davis
, 144 S.W.3d at 196-97.  However, our review is limited to examining the four corners of the affidavit to determine whether probable cause exists.  
Id
. at 197.

Here, Detective Hernandez stated in the arrest warrant affidavit that several witnesses, including Kevin Murphy, saw a white male and a white female hit Thompson with their car after arguing with him.  Thompson died several days later.  Detective Hernandez stated that he met with Cathy Collins and Rhonda Burcham on February 7, 2000 and that both women told him that appellant had visited their house the night Thompson was hit and had told them that he had tried to hit Murphy with his car.  According to Burcham, appellant said that he had tried to hit Murphy, but had hit Thompson instead.  Further, Detective Hernandez stated that both women identified pictures of appellant and Burdick from a photo line-up as the persons who came to their house that night.    

Detective Hernandez’s affidavit contained specific facts based on the personal observations of Murphy, Collins, Burcham, and Ronald Schultz, who were identified in his affidavit and interviewed by him.  
See Matamoros v. State
, 901 S.W.2d 470, 478 (Tex. Crim. App. 1995) (holding that a probable cause affidavit is sufficient if it specifies a named informant as supplying the information upon which probable cause is based and is sufficiently detailed to suggest direct knowledge on the informant's part.)  We conclude that these facts provided the magistrate with a substantial basis to make a probable cause determination that appellant committed murder.   

B. Articles 15.18 and 15.19 of the Code of Criminal Procedure

Appellant also argues that his written statement should have been suppressed because it resulted from violations of articles 15.18 and 15.19 of the code of criminal procedure.  
Tex. Code Crim. Proc. Ann.
 arts. 15.18, 15.19 (Vernon 2005).  Article 15.18 of the code of criminal procedure requires that a person arrested under a warrant issued in a county other than the one in which the person is arrested be taken before a magistrate of the county in which the person was arrested. 
Id
. art. 15.18.  The magistrate shall take bail, if allowed by law, and immediately transmit the bond taken to the court having jurisdiction of the offense.  
Id
.  According to article 15.19, if the person fails or refuses to give bail, he shall be committed to the jail of the county in which he was arrested. 
Id
. art. 15.19. 

Article 38.23 provides that no evidence obtained by an officer in violation of the Constitution or laws of the State of Texas shall be admitted in evidence against the accused in a criminal case.  
Id.
 art. 38.23(a) (Vernon 2005).  However, evidence is not “obtained . . . in violation” of the law if there is no causal relationship between the illegal conduct and the acquisition of the evidence.  
Gonzales v. State
, 67 S.W.3d 910, 912 (Tex. Crim. App. 2002).    Fort Worth police officers and Hood County sheriff’s deputies arrested appellant at his aunt’s house in Hood County under an arrest warrant that was issued in Tarrant County.  He was 
Mirandized
(footnote: 1) and taken to the Hood County courthouse, where a magistrate advised him of his rights again.  After the magistrate released appellant into their custody, the Fort Worth police officers transported appellant to Fort Worth, where Detective Hernandez 
Mirandized
 him again before interviewing him.  Appellant signed a form that contained a statement of his rights.  Appellant then gave a written statement in which he voluntarily waived his rights. 

Appellant argues that he should have been placed in the Hood County jail after being taken before the Hood County magistrate rather than being transported to Tarrant County.  Without deciding whether officials violated articles 15.18 and 15.19, we conclude that appellant presented no evidence that he would not have given a written statement had he been booked into the Hood County Jail.  Appellant has not shown that the alleged violations caused him to involuntarily give his written statement.  In fact, appellant has not shown that the alleged violations resulted in anything other than his expedited return to Fort Worth.  Therefore, appellant has not shown a causal connection between the alleged violations of the code of criminal procedure and the acquisition of his written statement.

C. Involuntariness

Appellant also argues that he did not voluntarily give his written statement.  We must examine the totality of the circumstances to determine whether a statement was given involuntarily.  
Creager v. State
, 952 S.W.2d 852, 856 (Tex. Crim. App. 1997).  The ultimate question is whether the defendant’s will was overborne.  
Id
.  To answer this question, courts look at circumstances such as length of detention, incommunicado or prolonged interrogation, denying family access to a defendant, refusing a defendant's request to telephone a lawyer or family, and physical brutality.  
Armstrong v. State
, 718 S.W.2d 686, 693 (Tex. Crim. App. 1985),
 overruled on other grounds, Mosley v. State
, 983 S.W.2d 249 (Tex. Crim. App. 1998).

Appellant was arrested around 11:00 a.m. on February 10, 2000 and was given his 
Miranda
 warnings by the arresting officer.  A Hood County magistrate advised appellant of his rights before releasing him into the custody of the Fort Worth police officers.  The police transported appellant to the Fort Worth police station.  There, after noticing that appellant had several scrapes, Detective Hernandez made appellant take his clothes off so that a crime scene officer could photograph his body.  Detective Hernandez again read appellant his 
Miranda
 warnings.  Appellant waived his rights and initialed a form containing a written statement of his rights.  Detective Hernandez began interviewing appellant around 2:00 p.m. that day, and appellant signed his written statement around 10:00 p.m. that night.  Appellant never indicated that he did not want to answer any more questions or that he wanted to speak to a lawyer.  Moreover, there is no evidence that police physically abused appellant.  Although appellant was in handcuffs and leg shackles during the interview, there is no evidence that appellant requested but was denied food, water, or bathroom breaks.  Based on the totality of the circumstances, we conclude that appellant’s written statement was voluntarily given.  We overrule appellant’s fourth point.  

IV. Evidence from Appellant’s Car

In his fifth point, appellant argues that the trial court erred by denying his motion to suppress evidence seized from his car.  Specifically, appellant contends that the evidence should have been suppressed because (1) the police trespassed onto private property to seize the evidence, (2) the affidavits supporting the search warrants  lacked probable cause, (3) the police violated the code of criminal procedure by removing from Somervell County appellant’s car and the evidence seized under the warrant, and 4) the police violated the code of criminal procedure by failing to make a proper inventory and return and properly maintain the property seized under the Tarrant County search warrant. 

A. Trespass

Appellant argues that evidence seized from his car should be excluded under article 38.23 because officers committed trespass when they seized the car.  
See 
Tex. Code Crim. Proc. Ann.
 art. 38.23.  After appellant was arrested, he told Fort Worth police officers that his car was located at the home of Carla Goodwin in nearby Somervell County.  Appellant’s aunt, Beverly Martin, called Goodwin and told her that the police were coming to seize the car.  Fort Worth police drove to Goodwin’s residence and were met by an investigator from the Somervell County Sheriff’s Office.  The officers had to drive some distance up Goodwin’s driveway before they were able to see appellant’s car parked in front of Goodwin’s house.  The officers knocked on Goodwin’s door, but no one answered.  Police later seized the car and transported it to the Somervell County impound yard. 

Article 38.23(a) does not confer automatic third-party standing on a defendant to complain about evidence obtained in violation of the rights of others.  
Fuller v. State
, 829 S.W.2d 191, 202 (Tex. Crim. App. 1992), 
cert. denied
, 508 U.S. 941 (1993); 
see also Janecka v. State
, 739 S.W.2d 813, 830 (Tex. Crim. App. 1987) (holding that defendant has no standing to complain of an illegal search of another’s residence), cert. denied, 522 U. S. 828 (1997); 
McArthur v. State
, 1 S.W.3d 323, 329 (Tex. App.སྭFort Worth 1999, pet. ref’d) (holding that defendant has no standing to complain of the seizure of phone records that belong to defendant’s employer), 
cert. denied
, 531 U.S. 873 (2000).  Here, appellant has no standing to complain that police trespassed on Goodwin’s land when they seized his car.     

B. Search Warrant Affidavits

Appellant argues that the affidavits supporting search warrants issued in Tarrant and Somervell Counties failed to set forth sufficient facts from which a magistrate could determine there was probable cause to search his car.  In reviewing a search warrant affidavit, we must determine whether there is a fair probability, not an actual showing, that evidence of a crime will be found in a particular place in light of the totality of the facts set forth in the affidavit.  
Davis
, 144 S.W.3d at 197.       

1. Somervell County

A Somervell County magistrate issued a search warrant authorizing the search of appellant’s car.  In his affidavit supporting the search warrant, Detective Manny Reyes set forth the background facts of the offense.  He also stated that appellant and Burdick had given voluntary statements in which they admitted hitting Thompson with appellant’s car.  In light of these facts, there was a fair probability that evidence of Thompson’s murder would be found in or on appellant’s car.  Therefore, the affidavit provided the magistrate with a substantial basis to conclude that a search would uncover evidence of a crime.   
2. Tarrant County

After the Somervell County warrant was executed, a Tarrant County magistrate issued another search warrant for appellant’s car.  Like the Somervell County search warrant affidavit, the Tarrant County search warrant affidavit set forth the background facts of the offense and stated that Burdick and appellant had given voluntary statements in which they admitted hitting Thompson with appellant’s car.  The affidavit explained that certain evidence had been obtained under the Somervell warrant but that additional evidence needed to be collected from appellant’s car, which was being stored in the Fort Worth Police Department Auto Pound.  Specifically, the affidavit requested permission to analyze the passenger side windshield wiper of appellant’s car and glass fragments inside appellant’s car in order to search for traces of Thompson’s blood and fibers from Thompson’s clothes.  From these facts, there was a fair probability that additional evidence of Thompson’s murder would be found in appellant’s car, and therefore we hold that the magistrate had a substantial basis for concluding that probable cause existed to issue the search warrant. 

C. Articles 18.09, 18.10, and 18.11 of the Code of Criminal Procedure 

Appellant argues that evidence obtained from his car should have been suppressed because officers violated articles 18.09, 18.10, and 18.11 of the code of criminal procedure.  
Tex. Code Crim. Proc. Ann.
 arts. 18.09, 18.10, 18.11 (Vernon 2005).  Article 18.09 requires that the officer who seizes property under a search warrant carry the property before a magistrate.  
Id
. 
art. 18.09.  According to article 18.10, after returning a search warrant, the officer shall deliver to the magistrate a copy of the inventory of the property taken into his possession under the warrant.  
Id.
 art. 18.10.  Article 18.10 also requires the officer to retain custody of the property until the magistrate issues an order directing the manner of the safekeeping of the property and prohibits the removal of the property from the county in which it was seized without an order approving the removal from a magistrate in the county in which the warrant was issued.  
Id. 
 Article 18.11 requires that property seized under a search warrant be kept as provided by the magistrate’s order issued under article 18.10.  
Id
. art. 18.11.

In the present case, after police executed the Somervell search warrant, they moved appellant’s car and the property seized from it to Tarrant County without an order from a magistrate in Somervell County authorizing the move.  In addition, police did not carry property seized under the Somervell warrant before the Somervell County magistrate.  After executing the Tarrant County search warrant, police also failed to deliver a copy of the inventory of the property seized under the warrant to the magistrate.  However, as we discussed earlier, article 38.23 does not require suppression of evidence if there is no causal relationship between the illegal conduct and the acquisition of the evidence.  
Tex. Code Crim. Proc. Ann.
 art. 38.23(a); 
Gonzales
, 67 S.W.3d at 912.  Appellant has not shown that police would not have obtained the evidence from his vehicle had they complied with the provisions in the code of criminal procedure relating to the handling of evidence seized under a search warrant.  Additionally, appellant has made no showing of prejudice.  Appellant argues only that the car 
may
 have been damaged on its front bumper during the tow.  We overrule appellant’s fifth point.

V. Causation

In his first point, appellant argues that the trial court erred by failing to include in its charge to the jury an instruction on “causation” as defined by section 6.04(a) of the penal code.  
See 
Tex. Penal Code Ann.
 § 6.04(a) (Vernon 2003).  

We look to article 36.19 of the code of criminal procedure for the standards of appellate review of claimed jury charge error.  
Tex. Code Crim. Proc. Ann.
 art. 36.19 (Vernon 1981); 
Trevino v. State
, 100 S.W.3d 232, 242 (Tex. Crim. App. 2003).  Appellate review of error in a jury charge involves a two-step process.  
Abdnor v. State
, 871 S.W.2d 726, 731 (Tex. Crim. App. 1994).  Initially, we must determine whether error occurred; if so, we must then evaluate whether sufficient harm resulted from the error to require reversal.  
Trevino
, 100 S.W.3d at 242; 
Abdnor 
, 871 S.W.2d at 731-32.  Error in the charge, if timely objected to in the trial court, requires reversal if the error was “calculated to injure [the] rights of the defendant,” which means no more than that there must be 
some
 harm to the accused from the error.  
Tex. Code Crim. Proc. Ann
. art. 36.19; 
see also Trevino
, 100 S.W.3d at 242;
 Abdnor
, 871 S.W.2d at 731-32; 
Almanza v. State
, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985) (op. on reh’g).  In other words, a properly preserved error will call for reversal as long as the error is not harmless.  
Almanza
, 686 S.W.2d at 171.  In making this determination, “the actual degree of harm must be assayed in light of the entire jury charge, the state of the evidence, including the contested issues and weight of probative evidence, the argument of counsel and any other relevant information revealed by the record of the trial as a whole.”  
Id.
; 
see also Ovalle v. State
, 13 S.W.3d 774, 786 (Tex. Crim. App. 2000).

Error due to erroneous omissions in the jury charge can result from either “omissions of issues upon which a trial court has a duty to instruct without a request from either party or issues that have been timely brought to the trial court’s attention.”  
Huizar v. State
, 12 S.W.3d 479, 483 (Tex. Crim. App. 2000) (quoting 
Posey v. State
, 966 S.W.2d 57, 63-64 (Tex. Crim. App. 1998)); 
Bluitt v. State
, 70 S.W.3d 901, 904-06 (Tex. App.སྭFort Worth 2002), 
rev’d on other grounds
, 137 S.W.3d 51 (Tex. Crim. App. 2004); 
see also
 
Tex. Code Crim. Proc. Ann.
 arts. 36.14, 36.15 (Vernon Supp. 2004-05), art. 36.16..  An accused is entitled to an instruction on every defensive issue raised by the evidence regardless of whether the evidence is strong, feeble, unimpeached, or contradicted, and even if the trial court thinks that the evidence should not be believed.  
Warren v. State
, 565 S.W.2d 931, 933-34 (Tex. Crim. App. 1978).   According to section 6.04(a) of the penal code, “A person is criminally responsible if the result would not have occurred but for his conduct, operating either alone or concurrently with another cause, unless the concurrent cause was clearly sufficient to produce the result and the conduct of the actor clearly insufficient.”  
Tex. Penal Code Ann.
 § 6.04(a). Section 6.04(a) requires the State to establish a “but for” causal connection between the defendant’s conduct and the resulting harm.  
Robbins v. State
, 717 S.W.2d 348, 351 (Tex. Crim. App. 1986).  As the 
Robbins
 court explained,

If concurrent causes are present, two possible combinations exist to satisfy the “but for” requirement: (1) the defendant’s conduct may be sufficient by itself to have caused the harm, regardless of the existence of a concurrent cause; or (2) the defendant’s conduct and the other cause 
together
 may be sufficient to have caused the harm. 

 

Id
.  Section 6.04(a) limits the “but for” causality by providing that the defendant cannot be convicted if the additional cause, other than defendant’s conduct, is clearly sufficient by itself to produce the result, and the defendant’s conduct by itself is clearly insufficient to produce the result.  
Id. 

Under appellant’s defensive theory, the cause of Thompson’s death was not appellant’s act of driving the car but Burdick’s independent act of opening the car door.  In his statement to the police, appellant claimed that he did not intend to hit Thompson with the car and that he was unaware that Burdick intended to open the car door to hit Thompson.  But appellant presented no evidence that the concurrent cause was clearly sufficient by itself to produce the result.  That is, appellant presented no evidence that Burdick’s act of opening the door, by itself, was sufficient by itself to cause Thompson’s death.  Absent appellant’s act of actually driving the car, there is no evidence that Burdick’s act of opening the car door would have caused Thompson’s death.  But appellant’s act of driving the car and ultimately hitting Thompson could have been sufficient by itself to have caused Thompson’s death.  Therefore, the trial court did not err by failing to include in the jury charge an instruction on concurrent causation.  We overrule appellant’s first point.

VI. Law of Parties

Appellant argues in his second point that the trial court erred by including in its charge to the jury an instruction on the law of parties under section 7.02(a) of the penal code.  
See
 
Tex. Penal Code Ann.
 § 7.02(a) (Vernon 2003).  Appellant contends that the evidence showed either that he did not intend to commit the crime or that he intended to commit the crime but acted alone.   A person is criminally responsible as a party to an offense if the offense is committed by his own conduct, by the conduct of another for which he is criminally responsible, or by both.  
Id.
 § 7.01(a).  Section 7.02(a)(2) of the penal code provides that a person is criminally responsible for an offense committed by the conduct of another if “acting with intent to promote or assist the commission of the offense, he solicits, encourages, directs, aids, or attempts to aid the other person to commit the offense.”  
Id
. ྷ 7.02(a)(2).  Generally, the trial court may instruct the jury on the law of parties if there is sufficient evidence to support a jury verdict that the defendant is criminally responsible under the law of parties.  
Ladd v. State
, 3 S.W.3d 547, 564 (Tex. Crim. App. 1999), 
cert. denied
, 529 U.S. 1070 (2000).  The court may consider the events that took place before, during, and after the commission of the crime.  
See
 
Paredes v. State
, 129 S.W.3d 530, 536 (Tex. Crim. App. 2004); 
Goff v. State
, 931 S.W.2d 537, 545 (Tex. Crim. App. 1996), 
cert. denied
, 520 U.S. 1171 (1997).

In the present case, there is evidence that appellant and Burdick had argued with Thompson the night he was hit by the car.  In his statement to police, appellant said that Burdick had told him that he should “kick [Thompson’s] ass” and that she wanted to “get [Thompson].”  He also said that he was “a little ticked” that Thompson had called Burdick a whore. 

Appellant admitted that he drove the car that hit Thompson but stated that he did not intend to hit Thompson and that Thompson was struck when Burdick opened her car door.  According to statements given to the police by Collins and Burcham, however, appellant told them that he had meant to hit Murphy but had hit Thompson instead.  Physical evidence suggested that the passenger door had struck Thompson; the passenger door window was broken out and there was damage to the passenger door itself.  However, there was also damage to the windshield on the passenger side of the car, suggesting appellant had been hit by the front of the car.  Also, eyewitness testimony showed that appellant was the driver, that he revved the car engine before striking Thompson, and that he drove fast through the parking lot. 

Based on these facts, we conclude that there was sufficient evidence for the jury to find that appellant acted with the intent to promote or assist the commission of murder and solicited, encouraged, directed, aided, or attempted to aid Burdick in murdering Thompson.  Accordingly, the trial court did not err by including an instruction on the law of parties in its charge to the jury.  We overrule appellant’s second point.       

VII. Transferred Intent

Appellant argues in his third point that the trial court erred by submitting a supplemental charge to the jury on the issue of transferred intent.  Section 6.04(b) of the penal code codifies the doctrine of transferred intent, which is a theory of criminal responsibility.  
Chimney v. State
, 6 S.W.3d 681, 700 (Tex. App.སྭWaco 1999, pet. ref’d).  Section 6.04(b) provides,

A person is nevertheless criminally responsible for causing a result if the only difference between what actually occurred and what he desired, contemplated, or risked is that:

(1) a different offense was committed; or

(2) a different person or property was injured, harmed, or otherwise affected. 

Tex. Penal Code Ann.
 § 6.04(b).  Under the statute, a defendant can be “criminally responsible” for the death of another if he actually caused the victim’s death while acting with the intent to kill a different person, even if he did not intend to kill the actual victim.  
Chimney
, 6 S.W.3d at 700.  Transferred intent is an issue to be determined during the guilt-innocence phase of the trial.  
Id
.   

The trial court’s original charge to the jury included an instruction on the law of transferred intent in the abstract portion of the charge but did not address the law of transferred intent in the application paragraphs.  The State referred to transferred intent during its closing argument, and appellant objected, arguing that the State’s argument was improper because the charge did not contain an application paragraph on the issue of transferred intent.  The trial court sustained appellant’s objection and instructed the jury to disregard the State’s last statement referring to transferred intent.  The trial court proposed giving the jury a supplemental charge that would include an application paragraph on the law of transferred intent.  Appellant objected, arguing that the evidence did not support an instruction on transferred intent and that the State waived the issue of transferred intent by not requesting that an application paragraph be included in the charge.  The trial court overruled appellant’s objection and submitted a supplemental charge to the jury with an application paragraph on the law of transferred intent. 

Appellant contends that the State waived any error in the trial court’s failure to include an application paragraph on transferred intent in its original charge and that the trial court should have sustained his objection to the State’s improper argument, instructed the jury to disregard, and done nothing more.  We disagree.

A trial court’s charge to the jury must include not only an abstract statement of the law but also an application of the law to the facts in the case.
  Tex. Code Crim. Proc. Ann.
 art. 36.14; 
Gray v. State
, 152 S.W.3d 125, 127-28 (Tex. Crim. App. 2004); 
Williams v. State
, 622 S.W.2d 578, 579 (Tex. Crim. App. [Panel Op.] 1981).  The omission of the application portion of the charge is trial court error. 
Gray
, 152 S.W.3d at 127-28; 
Barrera v. State
, 982 S.W.2d 415, 416 (Tex. Crim. App. 1998).  According to section 36.16 of the code of criminal procedure, “After the argument begins[,] no further charge shall be given to the jury unless required by the improper argument of counsel or the request of the jury.“  
Tex. Code Crim. Proc. Ann.
 art. 36.16.  However, the trial court may, before verdict, withdraw and correct its charge if an erroneous charge has been given.  
Bustillos v. State
, 464 S.W.2d 118, 125 (Tex. Crim. App. 1971); 
Roberson v. State
, 113 S.W.3d 381, 384 (Tex. App.སྭFort Worth 2003, pet. ref’d).  In the present case, the original charge submitted to the jury was erroneous because it did not include an application paragraph on the law of transferred intent.  
See
 
Gray
, 152 S.W.3d at 127-28; 
Barrera
, 982 S.W.2d at 416.  Therefore, the trial court did not err when it corrected the erroneous charge by giving the jury a supplemental charge applying the law of transferred intent to the facts in the case.
(footnote: 2)   

The purpose behind requiring an objection to preserve error on appeal is to give the trial court or opposing party the opportunity to correct the error or remove the basis for the objection.  
See Martinez v. State
, 22 S.W.3d 504, 507 (Tex. Crim. App. 2000).  Here, although the State did not object to the original jury charge on this issue, appellant objected to the State’s closing argument and thereby called the trial court’s attention to the lack of an application paragraph on transferred intent in the jury charge.  The trial court then corrected the error by submitting a supplemental charge to the jury with a paragraph applying the law of transferred intent to the facts in the case.  Because the State is not the party appealing the trial court’s ruling and judgment, it was not required to preserve error.  Accordingly, waiver does not apply.  
See Garza v. State
, 126 S.W.3d 79, 81-82 (Tex. Crim. App. 2004); 
see also
 
Gaines v. State
, 710 S.W.2d 630, 633 (Tex. App.སྭDallas 1986, pet. ref’d) (holding that trial court did not err by correcting a jury charge that did not include a necessary application paragraph and that the State did not acquiesce in the omission).  We overrule appellant’s third point. 

VIII. Deadly Weapon

In his sixth point, appellant argues that the trial court erred by including an affirmative finding of the use of a deadly weapon in its judgment.  In the indictment, appellant was charged with intentionally or knowingly causing the death of Thompson with a deadly weapon, namely, an automobile.  In its jury charge, the trial court instructed the jury that appellant was guilty of murder if (1) he intentionally or knowingly caused Thompson’s death by striking him with a deadly weapon, namely, an automobile; (2) he intentionally, with the intent to cause serious bodily injury to Thomson, committed an act clearly dangerous to human life, namely, striking Thompson with a deadly weapon, namely, an automobile; (3) Burdick intentionally or knowingly caused Thompson’s death by striking him with a deadly weapon, namely, an automobile, and appellant, acting with intent to promote or assist the commission of the offense, encouraged, directed, aided, or attempted to aid Burdick in the offense; or (4) Burdick intentionally, with intent to cause serious bodily injury to Thompson, committed an act clearly dangerous to human life, namely, striking Thompson with a deadly weapon, namely, an automobile, and appellant, acting with intent to promote or assist the commission of the offense, encouraged, directed, aided or attempted to aid Burdick in committing the offense. 

On the verdict form, the jury stated, “We, the jury find [appellant] guilty of the offense of murder, as charged in the indictment.”  In its judgment, the trial court stated that “the jury affirmatively finds that [appellant] used or exhibited a deadly weapon, to-wit: an automobile during the commission of the offense or during the immediate flight therefrom.” 

When an affirmative finding is made that a deadly weapon was used or exhibited during the commission of a felony offense and that the defendant used or exhibited the weapon or was a party to the offense and knew that a deadly weapon would be used or exhibited, the trial court must enter that finding in its judgment.  
Tex. Code Crim. Proc. Ann.
 art. 42.12, ྷ 3g(a)(2) (Vernon Supp. 2004-05).  A jury makes an affirmative finding that a deadly weapon was used or exhibited when it (1) finds the defendant guilty as charged in the indictment and the indictment alleged the use of a “deadly weapon,” (2)  finds the defendant guilty as charged in the indictment and, though not specifically pled in the indictment as a deadly weapon, the weapon pled is a deadly weapon per se, or (3) affirmatively answers a special issue on deadly weapon use.  
Davis v. State
, 897 S.W.2d 791, 793 (Tex. Crim. App. 1995); 
Edwards v. State
, 21 S.W.3d 625, 627 (Tex. App.སྭWaco 2000, no pet.).      Although the indictment in the present case charges appellant with using a deadly weapon and the jury found appellant guilty as charged in the indictment, appellant argues that because the jury charge allowed the jury to convict appellant as a party, the jury was required to make an express finding that appellant knew that a deadly weapon would be used or exhibited during the commission of the offense.  We disagree.  

To convict appellant of murder under the law of parties, the jury was required to find that appellant intended to promote or assist the commission of the offense.  See 
Tex. Penal Code Ann.
 § 7.02(a)(2).  In other words, the jury was required to find that appellant intended to promote or assist Burdick in murdering Thompson with a deadly weapon, namely, appellant’s car.  Therefore, before the jury could convict appellant as a party, it had to find that he knew a deadly weapon would be used in the commission of the offense.  
See Sarmiento v. State
, 93 S.W.3d 566, 570 (Tex. App.སྭHouston [14th Dist.] 2002, pet. ref’d).  The trial court did not err by including an affirmative finding of the use of a deadly weapon in its judgment.  We overrule appellant’s sixth point.     

IX. Conclusion

Having overruled all of appellant’s points, we affirm the trial court’s judgment.  

TERRIE LIVINGSTON

JUSTICE

PANEL A: CAYCE, C.J.; LIVINGSTON and MCCOY, JJ.

PUBLISH 

DELIVERED:  July 7, 2005

FOOTNOTES
1:
See Miranda v. Arizona
, 384 U.S. 436, 86 S. Ct. 1602 (1966).

2:
We also note that there was sufficient evidence of transferred intent for the trial court to place the issue before the jury.  Both Collins and Burcham told police that appellant said that he had meant to hit Murphy.  Further, Burcham told police that appellant said he had meant to hit Murphy but had hit Thompson instead.