COURT OF APPEALS

                                                 SECOND
DISTRICT OF TEXAS

                                                                FORT
WORTH

 

 

                                                NO.
 2-09-226-CR

 

 

HERSCHEL JEROME HURD                                                              APPELLANT

 

                                                             V.

 

THE STATE OF TEXAS                                                                             STATE

 

                                                       ------------

 

          FROM
CRIMINAL DISTRICT COURT NO. 1 OF TARRANT COUNTY

 

                                                       ------------

 

                                                      OPINION

 

                                                       ------------

I. 
Introduction








Appellant
Herschel Jerome Hurd appeals his conviction for aggravated assault on a public
servant.[1]  He contends in three issues that the evidence
is factually insufficient to establish the aggravating element of the offense,
that the trial court erred by including an affirmative deadly weapon finding in
the judgment, and that the judgment should be reformed to delete any reference
to a firearm.  We affirm the judgment as
modified.

II. 
Background

At
approximately 8 a.m. on August 20, 2008, Tarrant County Sheriff=s
Officer Michael Thompson escorted five inmates, Appellant, Christopher Shaw,
James Edwards, Erick Davila, and Julian Torres, to the basketball gym on the
eighth floor of the Tarrant County Jail. 
Officer Thompson conducted a pat-down search of each of the inmates
before escorting them to the gym. 








After
Officer Thompson secured the exterior gym door and left the inmates to play
basketball, the inmates called Officer Thompson back because there was water on
the gym floor.  Officer Thompson then
took the inmates to another gym on the eighth floor, and Shaw and Torres
entered the second gym. As Officer Thompson was closing the door to the second
gym, Appellant, Davila, and Edwards attacked him and pushed him into a nearby
vestibule.  All three pushed, kicked, and
punched Officer Thompson; Officer Thompson tripped, fell into the gym, and was
kicked in the head.  Appellant stepped on
the back of Officer Thompson=s
neck, told Officer Thompson not to move, and demanded that Officer Thompson
tell him which key opened the door. 
Davila had a shank in his hand and began stabbing Officer Thompson.  An inmate removed Officer Thompson=s
wallet and keys and attempted to remove his shirt.  Officer Thompson testified that the inmates
told him that they would kill him if he did not give them an escape route;
Officer Thompson gave them a route that was not an actual escape route.

Davila
yelled that Asomebody
is coming@
when an elevator arrived on the floor, and Appellant, Edwards, and Davila ran
toward the elevator.  Officer Teresa
Otterson and Tarranty County maintenance workers Nathan Peters and Charles
Tucker were on the elevator.  One of the
inmates punched Officer Otterson in the head, and Officer Otterson fell to the
floor.  Appellant then punched Peters.  Appellant, Edwards, and Davila then fled.

Officer
Raymond Manning and other officers responding to the emergency call apprehended
Appellant and Edwards as they were trying to open the back exit doors in the
gym; Appellant had Thompson=s
keys and was trying to open the door.[2]  Officer Manning testified that Appellant
appeared to be trying to escape and that it did not appear that Appellant was
being forced to participate.  Officer
Manning also testified that he observed blood on Appellant=s
hands and that Appellant had an injury on his thumb near where he would have
held a weapon.








Officer
Thompson was taken to the hospital; he had a cut on his left cheek that
required eleven stitches and a cut above his left eye that required three
stitches.  Officer Thompson also had pain
in his neck, suffered from headaches, and did not return to work for nine
weeks.  He testified that he did not
recall seeing a shank during the attack and does not know who stabbed him.  He also testified, however, that he can
definitively say that Appellant participated in the attack. 

Officers
recovered a shank, a homemade weapon, from the gym floor.  They recovered a second shank from a sewer
pipe connected to the toilets near the gym. 
The officers determined that the shanks had been made from heating
elements provided to inmates to warm their food.  Analysis of DNA collected from the first
shank revealed a mixture of three DNA contributors, and Appellant could not be
excluded as a contributor; a partial profile from DNA on the shank handle was
consistent with Appellant=s DNA.  And analysis of DNA from Appellant=s
jumpsuit excluded all inmates other than Appellant and contained DNA from
Thompson. 

Shaw
testified that prior to August 20, 2008, he became aware of an escape plan by
Edwards and Appellant.  Shaw overheard
that the men were planning the escape attempt and saying that they needed another
person.  Shaw testified that he heard
Appellant say that the third person would be Davila, Appellant=s Ahomeboy.@  Shaw testified that the escape plan was
Edwards=s
idea and that Edwards was trying to force others to participate; Shaw described
Edwards as a violent person with a murder conviction.








Shaw
testified that Davila had a nickname, AYoung
Truman,@ and
that Davila was part of the Truman Street Bloods; Shaw is also a Blood.  Shaw said that Appellant is a Crip and that Bloods
and Crips do not normally associate with one another.  However, Shaw testified that the Acode@ is
different in jail, that self-preservation is the first priority in jail, and
that self-preservation can sometimes mean affiliating with rival gang members.

Shaw
also witnessed the attack.  He testified
that Davila, Edwards, and Appellant all hit Thompson with their fists, that
Davila had a shank in his hand, that Davila was stabbing Thompson while Edwards
held him, and that Appellant put his foot on the back of Thompson=s
neck.  Shaw referred to Appellant as the
least aggressive of the three attackers but explained that he was referring to
the relative violence involved in their underlying crimes, not their respective
participation in the assault.  Shaw said
that Davila, Edwards, and Appellant were equal participants as he observed them
before and during the attack. Shaw testified that, from overhearing the
planning conversations and witnessing the attack, it appeared to him that
Appellant was a participant in the assault and was not forced into
participating. 

On
September 17, 2008, a grand jury indicted Appellant for aggravated assault on a
public servant with a deadly weapon. 
Appellant pleaded not guilty and was tried in June 2009.  The jury found Appellant guilty and assessed
his punishment at sixty years=
confinement.  The trial court sentenced
Appellant accordingly and included an affirmative deadly weapon finding in the
judgment.

III. 
Aggravating Element of the Offense








Appellant
contends in his first issue that the evidence is factually insufficient to
establish the aggravating element of his conviction for aggravated assault on a
public servant.  Specifically, Appellant
argues that the evidence fails to show that he used the deadly weapon, a shank,
or that he knew that a shank would be used. 
The State responds that the evidence is factually sufficient under the
law of parties to support Appellant=s
conviction. 

A.  Standard of Review

When
reviewing the factual sufficiency of the evidence to support a conviction, we
view all the evidence in a neutral light, favoring neither party.  Steadman v. State, 280 S.W.3d 242, 246
(Tex. Crim. App. 2009); Watson v. State, 204 S.W.3d 404, 414 (Tex. Crim.
App. 2006).  We then ask whether the
evidence supporting the conviction, although legally sufficient, is nevertheless
so weak that the factfinder=s
determination is clearly wrong and manifestly unjust or whether conflicting
evidence so greatly outweighs the evidence supporting the conviction that the
factfinder=s
determination is manifestly unjust.  Steadman, 280 S.W.3d at 246; Watson,
204 S.W.3d at 414B15, 417.  To reverse under the second ground, we must
determine, with some objective basis in the record, that the great weight and
preponderance of all the evidence, although legally sufficient, contradicts the
verdict.  Watson, 204 S.W.3d at
417.








Unless
we conclude that it is necessary to correct manifest injustice, we must give
due deference to the factfinder=s
determinations, Aparticularly those
determinations concerning the weight and credibility of the evidence.@  Johnson v. State, 23 S.W.3d 1, 9 (Tex.
Crim. App. 2000); see Steadman, 280 S.W.3d at 246.  Evidence is always factually sufficient when
it preponderates in favor of the conviction. 
Steadman, 280 S.W.3d at 247; see Watson, 204 S.W.3d at
417.

B.  Applicable Law

1.  Aggravated Assault on a Public Servant

A
person commits the offense of aggravated assault on a public servant if he
intentionally or knowingly threatens a person that the actor knows to be a
public servant with imminent bodily injury while the public servant is lawfully
discharging an official duty and employs a deadly weapon in the assault.  See Tex. Penal Code Ann. ''
22.01(a)(2), 22.02(b)(2)(B).

2.  The Law of Parties








Under
the law of parties, A[a] person is criminally
responsible as a party to an offense if the offense is committed by his own
conduct, by the conduct of another for which he is criminally responsible, or
by both.@  Tex. Penal Code Ann. '
7.01(a) (Vernon 2003); Frank v. State, 183 S.W.3d 63, 72 (Tex. App.CFort
Worth 2005, pet. ref=d).  A person is Acriminally
responsible@ for
an offense committed by the conduct of another if, Aacting
with intent to promote or assist the commission of the offense, he solicits,
encourages, directs, aids, or attempts to aid the other person to commit the offense.@  Tex. Penal Code Ann. '
7.02(a)(2) (Vernon 2003); Frank, 183 S.W.3d at 72.  In determining whether a defendant
participated in an offense as a party, the factfinder may examine the events
occurring before, during, and after the commission of the offense and may rely
on actions of the defendant that show an understanding and common design to
commit the offense.  Ransom v. State,
920 S.W.2d 288, 302 (Tex. Crim. App. 1996) (op. on reh=g).

C.  Analysis








Reviewing
all the evidence in a neutral light, we recall that no witnesses testified that
Appellant knew a shank would be used during the assault.  We also recall that Officer Thompson did not
find any weapons when he searched Appellant before escorting the inmates to the
gym, that the DNA analysis of one shank revealed contributors other than
Appellant, that only Davila was seen with a shank, that Appellant introduced
evidence that he may have been coerced into participating due to a threat
against his family,[3]
that Edwards devised the escape plan and was attempting to force others to
participate, and that it is not common for Bloods and Crips to associate with
one another in the manner that Davila and Appellant apparently did.  However, the jury also heard evidence that Appellant
and Edwards were planning the escape attempt before Davila was transferred to
the jail; that Appellant referred to Davila as his Ahomeboy@;
that Appellant appeared to multiple witnesses to be an uncoerced and willing
participant in the assault and escape attempts; that Appellant=s
DNA was consistent with that found on one shank; that Appellant could not be
excluded as a contributor of the DNA on the second shank; that Appellant=s
and Thompson=s
DNA were on Appellant=s jumpsuit; that Appellant
punched Peters; that Appellant hit, kicked, and stepped on Thompson; that
Appellant had an injury to his hand near where he would have held a weapon; and
that Appellant was holding the keys and trying to open the exit door when he
and Edwards were apprehended. 








Appellant
cites Wooden v. State to support his contention that the evidence is
factually insufficient to establish the aggravating element of his conviction
for aggravated assault on a public servant.  See 101 S.W.3d 542, 547B48
(Tex. App.CFort
Worth 2003, pet. ref=d).  In Wooden, we held that the evidence
was legally insufficient to support the aggravating element of aggravated
robbery because Athere [was] no evidence in
the record that appellant knew the gun was in the car or that appellant aided
or encouraged the other passenger to threaten [the complainant] with the gun.@  Id. at 548.  However, in Wooden, there was no
evidence that Wooden and his associates had previously planned the encounter
with the complainant.  See id. at
543B45.  Instead, the complainant confronted Wooden
and his associates after the complainant determined that the men were Aup
to no good.@  Id. at 543.  Here, there is evidence that Appellant and
Edwards had planned to escape for a period of time before the actual assault
and that the shanks were made from the heating elements provided to the inmates
to warm their food.  Further, multiple
witnesses testified that Appellant was an active participant in the planning,
the assault, and the escape attempt after the assault.  The jury could have inferred that Appellant
knew that the escape plan would include the use of the shanks.[4]

Viewing
all the evidence in a neutral light, and considering the events occurring
before, during, and after the assault, we conclude that a rational trier of
fact could have found beyond a reasonable doubt that Appellant, acting with
intent to promote or assist the commission of the offense, solicited,
encouraged, directed, aided, or attempted to aid Davila and Edward to commit
the offense of aggravated assault on a public servant.  See Tex. Penal Code Ann. '
7.02(a)(2); Frank, 183 S.W.3d at 72. 
We cannot say that the evidence is so weak that the jury=s
determination is clearly wrong or manifestly unjust or that the conflicting
evidence so greatly outweighs the evidence supporting the convictions that the
jury=s
determination is manifestly unjust.  See
Lancon v. State, 253 S.W.3d 699, 704 (Tex. Crim. App. 2008); Watson,
204 S.W.3d at 414B15, 417.  We therefore hold the evidence is factually
sufficient to support the jury=s
verdict.  We overrule Appellant=s
first issue.

IV. 
Affirmative Deadly Weapon Finding








Appellant
argues in his second issue that the trial court erred by including an
affirmative deadly weapon finding in the judgment because the jury did not make
an express finding that Appellant either used or exhibited a deadly weapon or
knew that a deadly weapon would be used or exhibited during the commission of
the offense. 








The
indictment in this case charged Appellant with intentionally or knowingly
causing bodily injury to Thompson and using or exhibiting Aa
deadly weapon during the commission of the assault, to-wit: a shank, that in
the manner of its use or intended use was capable of causing death or serious
bodily injury.@  The trial court instructed the jury that
Appellant is guilty of aggravated assault on a public servant as alleged in the
indictment if the jury found beyond a reasonable doubt that Appellant
intentionally or knowingly caused bodily injury to Thompson by kicking him with
his foot, by striking Thompson with his hand, or by cutting or stabbing
Thompson and Ause[d]
or exhibit[ed] a deadly weapon during the commission of the assault, to-wit: a
shank, that in the manner of its use or intended use was capable of causing
death or serious bodily injury.@  The charge also instructed the jury that
Appellant was guilty of aggravated assault on a public servant if the jury
found beyond a reasonable doubt that Appellant, Aacting
with the intent to promote or assist in the commission of the offense of
aggravated assault on a public servant, solicited, encouraged, directed, aided,
or attempted to aid Erick Davila or James Edwards to commit the offense of
aggravated assault on a public servant.@  Further, the jury charge included the lesser
included offense of assault on a public servant that did not include a deadly
weapon element.  

In Bell
v. State, the appellant made an argument virtually identical to Appellant=s.  See 169 S.W.3d 384, 398B99
(Tex. App.CFort
Worth 2005, pet. ref=d).  There, the appellant argued that Athe
trial court erred by including an affirmative finding of the use of a deadly
weapon in its judgment.@  Id. at 398.  He argued that the jury was required to make
an express finding that he knew that a deadly weapon would be used or exhibited
during the commission of the offense because the jury charge allowed the jury
to convict him as a party.  Id. at
399.  Rejecting the argument, we noted
that the indictment charged the appellant with using a deadly weapon and that
the jury found the appellant guilty as charged in the indictment.  Id. at 398.  We also stated,

To
convict appellant of murder under the law of parties, the jury was required to
find that appellant intended to promote or assist the commission of the
offense.  In other words, the jury was
required to find that appellant intended to promote or assist Burdick in
murdering Thompson with a deadly weapon, namely, appellant=s car.  Therefore, before the jury could convict
appellant as a party, it had to find that he knew a deadly weapon would be used
in the commission of the offense.  The
trial court did not err by including an affirmative finding of the use of a
deadly weapon in its judgment.

 

Id. at
398B99
(internal citations omitted); see Sarmiento v. State, 93 S.W.3d 566, 570
(Tex. App._Houston
[14th Dist.] 2002, pet. ref=d)
(op. on reh=g,
en banc).  








The
court in Sarmiento held that when a defendant is convicted under the law
of parties, a specific finding that the defendant used or exhibited a deadly
weapon or knew that a deadly weapon would be used or exhibited is not required
when the use or exhibition of a deadly weapon is an element of the charged
offense.  See 93 S.W.3d at 569B70.  The Sarmiento court stated:

[W]here the use of a deadly
weapon is an element of the offense, the State automatically carries the burden
of proving the defendant knew a weapon would be used or exhibited in the
commission of the offense.  In other
words, even as a party, a defendant cannot be convicted unless his
participation is accompanied with the intent Ato
promote or assist the commission of the offense.@  The offense here was aggravated robbery, and
the use of a deadly weapon was alleged in the indictment as an element of the
offense.  Thus, before jurors were
authorized to find appellant guilty, even as a party, they first had to believe
beyond a reasonable doubt that appellant knew a deadly weapon would be used in
the commission of the offense.  By its
verdict, the jury necessarily made the factual finding to support the entry of
an affirmative finding of the use or exhibition of a deadly weapon upon the
judgment.

Id. at
570. (internal citations omitted); see also Johnson v. State, 6 S.W.3d
709, 714 (Tex. App.CHouston [1st Dist.] 1999,
pet. ref=d)
(same).

Appellant
argues that because the jury charge did not repeat the language concerning the
use or exhibition of a deadly weapon in the portion defining his criminal
responsibility under the law of parties, Athe
record does not clearly show whether the conviction is grounded on direct or
party liability.@













As
in Bell and Sarmiento, the jury here was required to find that
Appellant intended to promote or assist the commission of the offense before it
could find him guilty of aggravated assault on a public servant.  See Bell, 169 S.W.3d at 398B99; Sarmiento,
93 S.W.3d at 569B70.  The trial court instructed the jury in the
definition section of the charge that A[a]n
assault is aggravated if the person intentionally or knowingly causes bodily
injury to a person the actor knows is a public servant while the public servant
is lawfully discharging an official duty and the actor uses or exhibits a
deadly weapon during the assault.@
[Emphasis added.]  The trial court also
instructed the jury that Appellant was guilty of aggravated assault on a public
servant if the jury found beyond a reasonable doubt that Appellant, Aacting
with the intent to promote or assist in the commission of the offense of
aggravated assault on a public servant, solicited, encouraged, directed,
aided, or attempted to aid Erick Davila or James Edwards to commit the
offense of aggravated assault on a public servant.@
[Emphasis added.]  Moreover, the jury
charge included the lesser included offense of assault on a public servant,
which did not include the aggravating deadly weapon element, but the jury did
not convict Appellant of the lesser charge. 
We assume that the jury followed the trial court=s
instructions in the absence of evidence to the contrary.  See Williams v. State, 937 S.W.2d 479,
490 (Tex. Crim. App. 1996).  Because the
jury had to believe beyond a reasonable doubt that Appellant used or exhibited
a deadly weapon or knew a deadly weapon would be used or exhibited to assault
Thompson before it could find Appellant guilty as charged in the indictment, a
separate express deadly weapon finding by the jury was not required, and the
trial court did not err by including an affirmative finding of the use of a
deadly weapon in its judgment.  See
Bell, 169 S.W.3d at 398B99; Sarmiento,
93 S.W.3d at 569B70; Johnson, 6 S.W.3d
at 714.  We overrule Appellant=s
second issue.[5]

V. 
Reformation of Judgment

Appellant
contends in his third issue that the judgment incorrectly lists a firearm as
the deadly weapon used or exhibited during commission of the offense and that
the judgment should be reformed to remove the reference to a firearm.  The State concedes that the judgment
incorrectly states that Appellant used or exhibited a firearm and requests that
the judgment be reformed to substitute a Ashank@ for
a firearm.  We sustain Appellant=s
third issue, in part, and order that the trial court=s
judgment be modified to substitute a Ashank@ in
place of the reference to a firearm.  See
Bigley v. State, 865 S.W.2d 26, 27B28
(Tex. Crim. App. 1993); see also Asberry v. State, 813 S.W.2d 526, 529B31
(Tex. App.CDallas
1991, pet. ref=d)
(reforming judgment to include affirmative deadly weapon finding to correct
trial court=s
clerical error in failing to include the finding in judgment).








VI. 
Conclusion

Having
overruled Appellant=s first and second issues,
and having sustained Appellant=s
third issue in part, we affirm the trial court=s
judgment as modified. 

 

 

PER CURIAM

 

 

PANEL:  GARDNER, J.; LIVINGSTON, C.J.; and MEIER, J.

 

PUBLISH

 

DELIVERED:  August 19, 2010











[1]See Tex. Penal Code Ann. '' 22.01(a)(2),
22.02(a)(2), (b)(2) (Vernon Supp. 2009).





[2]Davila was also
apprehended, but it is unclear from the record where he was apprehended.





[3]The State offered
rebuttal evidence, however, that the alleged threat occurred after the August
20, 2008 escape attempt.





[4]Stephens v. State, 717 S.W.2d 338
(Tex. Crim. App. 1986) is similarly distinguishable.  There, the appellant was in his apartment
when his associates entered the apartment escorting the complainant.  Id. at 339.  The appellant did not go with the men into
the bedroom until some time later.  Id.  The court of criminal appeals held there was
insufficient evidence of the aggravating element of aggravated rape because
there was no evidence that the appellant was aware that anyone threatened the
complainant with serious bodily injury or that the appellant was in the room
where the complainant was raped while any such threat was made.  See id. at 339B41.





[5]We are aware of our
holding in Barnes v. State that the trial court erred by including an
affirmative deadly weapon finding in the judgment in the absence of a special
jury issue on the use of a deadly weapon. 
See 56 S.W.3d 221, 240 (Tex. App.CFort Worth 2001, pet.
ref=d).  In Barnes, we stated that Awhen the jury is
instructed on the law of parties, the jury must expressly state that appellant
either used or exhibited a deadly weapon or knew that one would be used or
exhibited during the commission of the offense.@  Id. (citing Taylor v. State, 7
S.W.3d 732, 740B41 (Tex. App.CHouston [14th Dist.]
1999, no pet.)).  We note, however, that
subsequent to our decision in Barnes, we issued our decision in Bell,
and the Fourteenth Court of Appeals implicitly overruled Taylor.  See Bell, 169 S.W.3d at 398B99; see also
Sarmiento, 93 S.W.3d at 569B70 (expressly
overruling three cases holding similarly to Taylor).