

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
### FORT WORTH

### NO. 02-09-00395-CR

MARK OBERLANDER                                                    APPELLANT

V.

THE STATE OF TEXAS                                                    STATE

------------

FROM THE 396TH DISTRICT COURT OF TARRANT COUNTY

------------

## MEMORANDUM OPINION[1]

----------

A jury convicted Appellant Mark Oberlander of deadly conduct but acquitted him of manslaughter and criminally negligent homicide.[2] He brings four points, challenging the legal and factual sufficiency of the evidence to support his conviction and contending that the trial court reversibly erred by not including jury instructions on concurrent causation and voluntary act. Because we hold that the

---

[1]*See* Tex. R. App. P. 47.4.

[2]*See* Tex. Penal Code Ann. §§ 19.04, 19.05, 22.05(b), (e) (Vernon 2003).

evidence is sufficient and that the trial court committed no reversible error, we affirm the trial court's judgment.

## I. Summary of Facts

Appellant and David Kwilos lived in a house in Arlington, Texas, with its owner, Matt Rabun. At trial, Kwilos's friend David Campbell testified that he regularly spent time at the house and that on September 28, 2008, he arrived at the house around 12:30 or 1:00 a.m. He got a beer and went to Kwilos's room and woke him up. The two men talked while Campbell fixed himself something to eat. Campbell and Kwilos became aware that someone else was present but did not see anyone; eventually Campbell noticed Appellant "peering around the corner, almost like he didn't know [that Campbell] was there." Campbell greeted Appellant, who then returned to his bedroom. Kwilos became agitated and went into Appellant's bedroom. Campbell could tell that they were arguing, and a few minutes later, Kwilos came out of Appellant's room, upset. From what Kwilos said to Campbell, Campbell concluded that Appellant had put a gun to Kwilos's head.

Kwilos went back into Appellant's room and came out again about ten seconds later, carrying a pool stick by its smaller end. He picked up Campbell's keys from the sofa and told Campbell to follow him. Kwilos, with Campbell following, went to Appellant's room. From the doorway, Campbell could see Appellant on his bed. He did not see a gun. Campbell said he was leaving and

headed toward the back door. Before he reached the back door, Campbell heard a shot.

Campbell testified that a few weeks before the shooting, Appellant had a confrontation with two other men at the house during a poker game. Several days later, Appellant brought two guns to the house, one that "looked like an AK-47" and an assault shotgun with a pistol grip. Campbell stated that Appellant said he had five bullets, "each one with our names on it." Campbell also testified that a few days before the shooting, Kwilos and Appellant had had a fist fight over a knife that the three men had been using to install carpet in the house.

The State introduced a copy of a 911 call from the night of the shooting on which Appellant and Kwilos can be heard arguing. Kwilos can be heard saying, "I should have fucked you up so bad for fucking what you did yesterday," to which Appellant replied, "I'm about to kill you anyway." A shotgun blast can be heard on the tape after that. Appellant stayed on the phone until the police arrived, and on the tape Appellant repeatedly stated that the gun went off when Kwilos grabbed the gun and pulled it toward him. Appellant made this same assertion when interviewed by the police after his arrest.

Jamie Becker of the Tarrant County Medical Examiner's Office testified that when Kwilos was shot, in her opinion, the end of the barrel was not in contact with the skin but was closer than six feet away. She could not say whether Kwilos's arm had been extended when he was shot; she could only say that it was not down by his side. Marc Krouse, also from the medical examiner's

3

office, first characterized the wound as a "close-range wound from a shotgun" but later characterized it as a "distant range wound" based on the lack of soot or powder and the fact that the shot had begun to disperse. He later stated that the wound "impl[ied] that the muzzle-to-skin distance [was] not really that far [away]." Krouse also testified that at the time of his death, Kwilos had benzodiazepine, Valium, cannabinoids, hydrocodone, methamphetamine, and ecstasy in his system.

## II. Sufficiency of the Evidence

Appellant was charged by indictment with deadly conduct[3] by knowingly discharging a firearm at or in the direction of Kwilos. Appellant argues in his first two points that the State was required to prove beyond a reasonable doubt that he knowingly discharged the weapon and that the State failed to sustain its burden of proof.

After Appellant submitted his brief, the Texas Court of Criminal Appeals held that there is no meaningful distinction between the legal sufficiency standard and the factual sufficiency standard.[4] Thus, the *Jackson* standard, which is explained below, is the "only standard that a reviewing court should apply in

---

[3]*See* Tex. Penal Code Ann. § 22.05(b).

[4]*Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010) (overruling *Clewis v. State*, 922 S.W.2d 126, 131–32 (Tex. Crim. App. 1996)).

determining whether the evidence is sufficient to support each element of a criminal offense that the State is required to prove beyond a reasonable doubt."[5]

In our due-process review of the sufficiency of the evidence to support a conviction, we view all of the evidence in the light most favorable to the prosecution to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.[6]  The jury is the sole judge of the credibility of the evidence and the weight to be given to each piece of evidence.[7]

The sufficiency of the evidence in a criminal case is not determined by a no-evidence standard.[8]  Instead, we must look at all the evidence to determine whether a rational jury could have found that the State proved every element of the offense of felony deadly conduct.

Lorri Tiner, Kwilos's sister, testified that he had called her a day or so before his death and had told her that Appellant had threatened to kill him. Kwilos asked Tiner to help him leave the home, and she testified that he had

---

[5]*Id.*

[6]*Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007).

[7]*Brooks*, 323 S.W.3d at 899.

[8]*Butler v. State,* 769 S.W.2d 234, 239 (Tex. Crim. App. 1989), *overruled on other grounds by Geesa v. State,* 820 S.W.2d 154, 161 (Tex. Crim. App. 1991), *overruled on other grounds by Paulson v. State,* 28 S.W.3d 570, 571 (Tex. Crim. App. 2000).

recently qualified to receive governmental housing assistance. He was to move into a new home but was killed before he could do so. Her testimony was confirmed by the 911 recording the jury heard.

Appellant admitted that he was holding the firearm when he told Kwilos that he was about to kill him and immediately before it discharged, killing Kwilos. Appellant said that the weapon discharged when Kwilos grabbed the barrel. The jury, as the trier of fact, was free to determine the credibility of the witnesses and to evaluate the meaning of the recording they heard. The medical testimony supports both theories, that of Appellant's firing the weapon and that of Kwilos's grabbing the barrel. The jury obviously believed that Appellant carried out his intention to kill Kwilos rather than Appellant's version of the events.

Applying the appropriate standard of review, we hold that the State sustained its burden of proving each and every element of the offense of deadly conduct, as alleged in the indictment, beyond a reasonable doubt. We overrule Appellant's first two points.

## III. Jury Charge

Appellant argues in his third and fourth points that the trial court reversibly erred by failing to instruct the jury on concurrent cause and voluntary act.[9] Appellate review of error in a jury charge involves a two-step process.[10] Initially,

---

[9]*See* Tex. Penal Code Ann. §§ 6.01, 6.04 (Vernon 2003).

[10]*Abdnor v. State*, 871 S.W.2d 726, 731 (Tex. Crim. App. 1994); *see also* *Sakil v. State*, 287 S.W.3d 23, 25–26 (Tex. Crim. App. 2009).

6

we must determine whether error occurred. If it did, we must then evaluate whether sufficient harm resulted from the error to require reversal.[11]

The trial court has a duty to instruct the jury on the law applicable to the case regardless of any objection to the charge by Appellant.[12] Appellant is correct that there is evidence of a concurrent cause, based on his contention that Kwilos grabbed the barrel and pulled the weapon toward him while Appellant's finger was on the trigger. Appellant is also correct that the same evidence raises the issue of voluntary act. Consequently, concurrent causation and voluntariness were part of the law applicable to the case if instructions on the issues had been requested,[13] and the trial court could properly have instructed the jury on concurrent causation and voluntariness.

Concurrent causation and voluntariness, however, are defensive issues.[14] "An unrequested defensive issue is not the law applicable to the case."[15] A trial court is not required to sua sponte instruct the jury on purely defensive issues because to require instruction on defensive issues is to intrude on counsel's trial

---

[11]*Abdnor*, 871 S.W.2d at 731–32.

[12]*Taylor v. State*, 332 S.W.3d 483, 486 (Tex. Crim. App. 2011).

[13]*See Tolbert v. State*, 306 S.W.3d 776, 779 (Tex. Crim. App. 2010) (citing *Posey v. State*, 966 S.W.2d 57, 61 (Tex. Crim. App. 1998)).

[14]See Tex. Penal Code Ann. §§ 6.01, 6.04; *Rogers v. State*, 105 S.W.3d 630, 639 (Tex. Crim. App. 2003); *Bell v. State*, 169 S.W.3d 384, 394–95 (Tex. App.—Fort Worth 2005, pet. ref'd).

[15]*Taylor*, 332 S.W.3d at 487.

strategy.[16]  Because Appellant did not object to the omissions from the charge or request the omitted instructions, the trial court did not err by choosing not to instruct the jury on those issues.[17]  We overrule Appellant's third and fourth points.

## IV. Conclusion

Having overruled Appellant's four points, we affirm the trial court's judgment.

LEE ANN DAUPHINOT
JUSTICE

PANEL:  DAUPHINOT, WALKER, and MCCOY, JJ.

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED:  May 12, 2011

---

[16]*Tolbert*, 306 S.W.3d at 780 (citing *Delgado v. State*, 235 S.W.3d 244, 249–50 (Tex. Crim. App. 2007)).

[17]*See id.*