COURT OF APPEALS

SECOND DISTRICT OF TEXAS

FORT WORTH

NO. 2-05-432-CR

SAMUEL MATA APPELLANT

V.

THE STATE OF TEXAS STATE

------------

FROM CRIMINAL DISTRICT COURT NO. 1 OF TARRANT COUNTY

------------

MEMORANDUM OPINION
(footnote: 1)

------------

In four points, appellant Samuel Mata appeals his conviction for capital murder.  We affirm.

BACKGROUND

Appellant was charged with committing the capital murder of Ann Barton Williams on or about November 10, 2004, by stabbing her and then committing or attempting to commit arson or robbery.  He pled not guilty.

Ferrell Coleman testified that Appellant had moved into Coleman’s house two weeks before November 10 and did not have his own vehicle.  Coleman testified that he knew Williams, that he dropped Appellant off at Williams’ apartment on November 9, between six and seven p.m., and that he saw Appellant the next day, when Appellant came home around five a.m.  Coleman testified that Appellant told him that he had killed Williams and her dog and then had set Williams’ apartment on fire.  Appellant showed Coleman his knife
(footnote: 2) and told him that he had parked Williams’ van around the corner.  Coleman testified that although he did not believe Appellant at first, when he saw a brief news report about a woman, a dog, and an apartment on fire, he knew that Appellant had told him the truth.

Coleman testified that he told Appellant to get rid of the van because that was the only thing he could think of to get Appellant out of the house and that Appellant said to meet him at a McDonald’s in south Dallas.  After Appellant left, Coleman and his family went to the Arlington police station.  He testified, 

We went to the desk, me, and Cherry and Sheila. . . . and I told [the desk officer] that I wanted to talk to them about the—about the homicide this morning.  And they said, well, what homicide, you talking about the fire, you know.  They didn’t know that a murder had been committed at all yet . . . .

Arlington police sergeant Mark Simpson testified that on November 10, three people came to the police station to report the murder of a woman and that one of those people was Coleman.  Sergeant Simpson testified that Coleman told him about Appellant’s plan to meet Coleman at the McDonald’s.

Dallas police officer James Swinney testified that he had been on patrol on November 10 when he received a “be on the look out” alert for Williams’ van.  He testified that he and his partner went to the location they had been told that the suspect might be, a McDonald’s, and that there was a white van parked in the parking lot when they drove up.
(footnote: 3)  They arrested Appellant, patted him down, and located the knife.  The knife tested positive for Williams’ blood and DNA.  Arlington police officer Chad Willie testified that the Dallas police officers transferred Appellant to him at the McDonald’s.  He testified that the additional items taken from Appellant at book-in included a credit card with Williams’ name on it and some items of jewelry.  Williams’ brother and daughter identified the jewelry, admitted into evidence at trial, as belonging to Williams. Appellant confessed to his involvement in Williams’ death in a videotaped police statement, which was admitted into evidence and played for the jury. 
Testimony from the various firefighters provided details about the fire in Williams’ apartment—although all four burners on the stove and the oven had been turned on high, the fire itself occurred in Williams’ bedroom.  A Coleman fuel can, located on the bed in Williams’ bedroom, was admitted into evidence. Arlington fire investigator Stuart Brozgold testified that in his opinion, the fire had been a set fire, not an accidental one.  The medical examiner testified that the heat injuries to Williams’ body occurred after she was already dead, that the four stab wounds were the cause of her death, that the blade width of the knife was small enough to have produced Williams’ wounds, and that her injuries were not consistent with an accident, but had required four separate thrusts. 

The jury found Appellant guilty of capital murder.  The trial court rendered judgment on that verdict and assessed punishment at life imprisonment.
(footnote: 4)

SUFFICIENCY OF THE EVIDENCE

In his first two points, Appellant complains that the evidence was not legally and factually sufficient to support his conviction for capital murder.

Standard Of Review

In reviewing the legal sufficiency of the evidence to support a conviction, we view all the evidence in the light most favorable to the verdict in order to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.  
Jackson v. Virginia
, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); 
Hampton v. State
, 165 S.W.3d 691, 693 (Tex. Crim. App. 2005).  When reviewing the factual sufficiency of the evidence to support a conviction, we view all the evidence in a neutral light, favoring neither party.  
Watson v. State
, 204 S.W.3d 404, 414 (Tex. Crim. App. 2006); 
Drichas v. State
, 175 S.W.3d 795, 799 (Tex. Crim. App. 2005). 

In reviewing a factual sufficiency challenge, we ask whether the evidence supporting the conviction, although legally sufficient, is nevertheless so weak that the fact-finder’s determination is clearly wrong and manifestly unjust or whether conflicting evidence so greatly outweighs the evidence supporting the conviction that the fact-finder’s determination is manifestly unjust.  
Watson
, 204 S.W.3d at 414-15, 417; 
Johnson v. State
, 23 S.W.3d 1, 11 (Tex. Crim. App. 2000).  To reverse under the second ground, we must determine, with some objective basis in the record, that the great weight and preponderance of all the evidence, though legally sufficient, contradicts the verdict.  
Watson
, 204 S.W.3d at 417.  We must give due deference to the fact-finder’s determinations, “particularly those determinations concerning the weight and credibility of the evidence.”  
Johnson
, 23 S.W.3d at 9.

Capital Murder

A person commits capital murder if he intentionally causes the death of an individual in the course of committing or attempting to commit robbery or arson, among other offenses.  
See 
Tex. Penal Code Ann. 
§§ 19.02(b)(1), 19.03(a)(2) (Vernon 2005 & Supp. 2006).  Appellant’s sole complaint with regard to legal and factual sufficiency is that the record indicates that he did not have the specific intent to kill Williams.  He claims that the knife was held up to Williams “in a manner that was intended to cause her to back away from him in her enraged state,” and that he accidentally stabbed her.

We must consider all the evidence admitted at trial, even improperly admitted evidence, when performing a legal sufficiency review.  
Moff v. State
, 131 S.W.3d 485, 489-90 (Tex. Crim. App. 2004).  And, in a legal sufficiency review, the jury’s inference of intent is afforded more deference than the evidence supporting proof of conduct.  
Margraves
 
v. State
, 34 S.W.3d 912, 919 (Tex. Crim. App. 2000).  Circumstantial evidence of a defendant’s guilty knowledge is not “required to meet the same rigorous criteria for sufficiency as circumstantial proof of other offensive elements.”  
Id
. (quoting 
Brown v. State
, 911 S.W.2d 744, 747 (Tex. Crim. App. 1995)).  In determining the legal sufficiency of the evidence to show an appellant’s intent, and faced with a record that supports conflicting inferences, we “must presume—even if it does not affirmatively appear in the record—that the trier of fact resolved any such conflict in favor of the prosecution, and must defer to that resolution.”  
Matson v. State
, 819 S.W.2d 839, 846 (Tex. Crim. App. 1991).  Specific intent can be inferred from conduct, remarks, or all the surrounding circumstances.  
See Couchman v. State
, 3 S.W.3d 155, 163 (Tex. App.—Fort Worth 1999, pet. ref’d).  An oral expression of intent is not required, and a defendant’s conduct alone is sufficient to infer intent.  
See id.

The jury watched Appellant’s videotaped confession, in which Appellant stated that he choked Williams with his hands.  He claimed that he hit her with his knife one time and that it was an accident.  He indicated that he thought she was just choking and that he knocked the lighted candle onto the bed.  He stated that he did not know how to stop the blood and did not try to stop the bleeding.  He said that he did not know if the bed caught on fire and that he just left.  He used her keys to lock the door.  He stated that the apartment was smoky when he left.

In addition to Appellant’s videotaped confession, the jury also heard testimony from the medical examiner that Williams was killed by four stab wounds, caused by four separate thrusts.  Photographs of the stab wounds were admitted into evidence and explained and published to the jury.  The jury also heard Coleman’s testimony that Appellant told him that he had killed Williams and showed Coleman his knife.  Coleman’s own criminal history was revealed to the jury before any of his testimony about Appellant.

Reviewing this evidence in the light most favorable to the verdict, we conclude that a rational trier of fact could have found beyond a reasonable doubt that Appellant had the specific intent to kill Williams.  
See Jackson
, 443 U.S. at 319, 99 S. Ct. at 2789.  The jury could have inferred this intent from the photographs and testimony about the four stab wounds and resolved Appellant’s conflicting claim in his videotaped confession, that he accidentally hit Williams once with the knife, by choosing to disbelieve him.  
See Margraves
, 34 S.W.3d at 919; 
Matson
, 819 S.W.2d at 846.  Further, reviewing this evidence in a neutral light and giving due deference to the jury’s determination, we draw the same conclusion.  
See Watson
, 204 S.W.3d at 414.  The photographs, the medical examiner’s testimony, Coleman’s testimony that Appellant said he killed Williams and set the apartment on fire, Appellant’s own statements that he knocked the lighted candle onto the bed and left the smoky apartment using Williams’ keys to lock the door provided the basis upon which the jury could have reasonably concluded that Appellant had the specific intent to kill Williams, against the sole conflicting evidence presented by Appellant’s statement that it was an accident.  
See Johnson
, 23 S.W.3d at 9, 11.  We overrule Appellant’s first and second points.

MOTION TO SUPPRESS

In his third point, Appellant complains that the trial court erred by overruling Appellant’s motion to suppress the video statement, which he alleges was taken in violation of article 38.22 of the Texas Code of Criminal Procedure and the Fifth and Fourteenth Amendments to the United States Constitution.  
See
 
U.S. Const. 
amends.
 V, XIV; Tex. Code Crim. Proc. Ann. 
art. 38.22 (Vernon 2005).

Standard Of Review

We review a trial court’s ruling on a motion to suppress evidence under a bifurcated standard of review.  
Carmouche v. State
, 10 S.W.3d 323, 327 (Tex. Crim. App. 2000); 
Guzman v. State
, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997).  In reviewing the trial court’s decision, we do not engage in our own factual review.  
Romero v. State
, 800 S.W.2d 539, 543 (Tex. Crim. App. 1990); 
Best v. State
, 118 S.W.3d 857, 861 (Tex. App.—Fort Worth 2003, no pet.).  The trial judge is the sole trier of fact and judge of the credibility of the witnesses and the weight to be given their testimony.  
State v. Ross
, 32 S.W.3d 853, 855 (Tex. Crim. App. 2000); 
State v. Ballard
, 987 S.W.2d 889, 891 (Tex. Crim. App. 1999).  Therefore, we give almost total deference to the trial court’s rulings on (1) questions of historical fact, even if the trial court’s determination of those facts was not based on an evaluation of credibility and demeanor, and (2) application-of-law-to-fact questions that turn on an evaluation of credibility and demeanor.  
Montanez v. State
, 195 S.W.3d 101, 108-09 (Tex. Crim. App. 2006); 
Johnson v. State
, 68 S.W.3d 644, 652-53 (Tex. Crim. App. 2002); 
State v. Ballman
, 157 S.W.3d 65, 68 (Tex. App.—Fort Worth 2004, pet. ref’d).  But when the trial court’s rulings do not turn on the credibility and demeanor of the witnesses, we review de novo a trial court’s rulings on mixed questions of law and fact.  
Estrada v. State
, 154 S.W.3d 604, 607 (Tex. Crim. App. 2005); 
Johnson
, 68 S.W.3d at 652-53.

Stated another way, when reviewing the trial court’s ruling on a motion to suppress, we must view the evidence in the light most favorable to the trial court’s ruling.  
State v. Kelly
, 204 S.W.3d 808, 818 (Tex. Crim. App. 2006).  When the trial court makes explicit fact findings, we determine whether the evidence, when viewed in the light most favorable to the trial court’s ruling, supports those fact findings.  
Id
. at 818-19.  We then review the trial court’s legal ruling de novo unless its explicit fact findings that are supported by the record are also dispositive of the legal ruling.  
Id
. at 819.  We must uphold the trial court’s ruling if it is supported by the record and correct under any theory of law applicable to the case, even if the trial court gave the wrong reason for its ruling.  
Armendariz v. State
, 123 S.W.3d 401, 404 (Tex. Crim. App. 2003), 
cert. denied
, 541 U.S. 974 (2004); 
Ross
, 32 S.W.3d at 856; 
Romero
, 800 S.W.2d at 543.

Suppression Hearing Findings

The trial judge made the following oral findings of fact and conclusions of law
(footnote: 5) at the conclusion of the suppression hearing:

On November the 10th of 2004, the Arlington Police Detective, David Frias, came in contact with [Appellant] when he was booked into the city jail.  He took him to an interview room in the police department, gave him his Miranda warnings, which are located on the videotape itself, and the card was signed by [Appellant], which is admitted as State’s Exhibit No. 3.  That he made a recording of his entire interview with [Appellant] and the third person located in the interview was . . . Detective Ben Lopez[,] who is identified, and [Appellant].  That the recording device worked correctly.  That it was operated by a Detective Johnson . . . [t]hat the operator was competent and that it’s accurate. . . . State’s Exhibit 1 has not been altered.  State’s Exhibit 2 has been altered to remove agreed-upon items.[
(footnote: 6)]

That the interrogation lasted one and a half hours and was completely recorded.  That [Appellant] never was threatened.  That he understood what was going on.  That he was responsive to the questions asked.  That he had no complaints about his physical or mental health.  And that he had no complaints about any treatment by any officer.

[Appellant’s] first Miranda warning was given on the tape, and he indicated that he understood all parts of that Miranda warning, and then he voluntarily and intelligently waived those rights and gave the statement that’s contained in State’s Exhibit No. 1.  And the Court finds that the statement is freely and voluntarily made.  That [Appellant] intelligently waived his rights, and as a matter of law, finds that the statement is admissible.

Detective Frias testified at the suppression hearing, and the trial judge watched the videotape before making his findings and conclusions.

Article 38.22 Of The Texas Code Of Criminal Procedure

An oral statement made as a result of custodial interrogation is inadmissible unless the following are shown: that an electronic recording, including videotape, is made of the statement; that the accused was given the warnings in article 38.22, section 2(a) and knowingly, intelligently, and voluntarily waived the rights set out in the warnings;
(footnote: 7) that the recording device was capable of making an accurate recording, the operator was competent, and the recording was accurate and unaltered; and that all voices on the recording were identified.  
See
 
Tex. Code Crim. Proc. Ann. 
art. 38.22, § 3(a).  All of these requirements were addressed in the trial court’s findings of fact, and Appellant contests only the voluntariness of his statement, claiming that he did not understand his rights and that he would not have given a statement if he had understood that he could terminate the interview.

We must examine the totality of the circumstances to determine whether a statement was given voluntarily.  
Wyatt v. State
, 23 S.W.3d 18, 23 (Tex. Crim. App. 2000); 
Bell v. State
, 169 S.W.3d 384, 391 (Tex. App.—Fort Worth 2005, pet. ref’d).  To determine whether Appellant’s will was overborne, rendering the statement involuntary, we examine circumstances such as length of detention, incommunicado or prolonged interrogation, denial of family access to him, refusals of requests to telephone a lawyer or family, or physical brutality.  
Lane v. State,
 933 S.W.2d 504, 512 (Tex. Crim. App. 1996);
 Bell
, 169 S.W.3d at 391.

Appellant was arrested during the morning of November 10 and arrived at the Arlington jail that same day, around 12:05 p.m.  Detective Frias began the interview with Appellant at 1:50 p.m. and advised him of his 
Miranda
 rights.  The interview took around an hour and a half, although Detective Frias testified that in its entirety, it “lasted maybe two hours.”
(footnote: 8)  There is nothing in the record to indicate that Appellant did not want to answer the detectives’ questions or that he wanted to speak to a lawyer or to his family, or that the police physically abused him or threatened him.  And although Appellant was in handcuffs during the interview, there is nothing in the record to show, nor does he allege, that he requested but was denied food, water, or bathroom breaks.
(footnote: 9)  There is no evidence that Appellant’s family attempted to contact him.  Based on the totality of these circumstances, we conclude that Appellant voluntarily gave his statement.  
See Bell
, 169 S.W.3d at 391.

With regard to understanding his warnings, as the trial court found, Appellant indicated on the videotape that he did understand each warning as it was read to him by the police detectives and then he read, initialed, and signed the 
Miranda
 card given to him.  As found by the trial court, during the videotaped interview and in plain writing on the 
Miranda
 card, Appellant was clearly advised, “You have the right to terminate the interview at any time,” and indicated that he understood this right on the tape and by signing the 
Miranda
 card.  At the suppression hearing, Detective Frias testified that he was confident that Appellant understood his 
Miranda
 warnings because “[Appellant] seemed articulate; he seemed able to comprehend the conversation that we were having, and I asked him if he understood and he said he did.” Detective Frias also testified that Appellant never told him that he wanted to terminate the interview, that he did not get the impression that Appellant wanted to, and that he believed that Appellant’s statement was freely and voluntarily made.
(footnote: 10)
 There is nothing in the record to support Appellant’s assertion that his statement was involuntary, based on the totality of the circumstances.  
Bell
, 169 S.W.3d at 391.  Nothing in the record supports Appellant’s contentions that he did not understand the warnings, that he did not know he could terminate the interview, or that he would not have given the statement had he known that he could terminate the interview.  To the contrary, the trial court’s explicit fact findings are supported by the record, both in the videotape and in Detective Frias’ testimony at the suppression hearing.  Because those fact findings are also dispositive of the trial court’s legal ruling, we need not further address Appellant’s contentions, and we overrule his third point.  
See Kelly
, 204 S.W.3d at 818-19; 
Romero
, 800 S.W.2d at 543.

ADMISSION OF EVIDENCE

In his final point, Appellant complains that the trial court abused its discretion by overruling his rule 403 objection to the admission of the videotaped police statement.  
See
 
Tex. R. Evid. 
403.  He makes essentially the same argument as in his third point, that the videotape was unfairly prejudicial to him because he was “tricked” into the statement in violation of the state and federal constitutions.  He also complains that the trial court did not conduct a rule 403 balancing test.  
Id.

Standard Of Review

We review a trial court’s decision to admit or exclude evidence under an abuse of discretion standard.  
Green v. State
, 934 S.W.2d 92, 101-02 (Tex. Crim. App. 1996); 
Montgomery v. State
, 810 S.W.2d 372, 391 (Tex. Crim. App. 1991) (op. on reh’g).  If the court’s decision falls outside the “zone of reasonable disagreement,” it has abused its discretion.  
Montgomery
, 810 S.W.2d at 391.  As long as the trial court’s ruling falls within the zone of reasonable disagreement, however, we will affirm its decision.  
Moses v. State
, 105 S.W.3d 622, 627 (Tex. Crim. App. 2003).  The trial court’s decision must be reasonable in view of all the relevant facts.  
Santellan v. State
, 939 S.W.2d 155, 169 (Tex. Crim. App. 1997).  The mere fact that a trial court may decide a matter within its discretionary authority in a different manner than an appellate court would in a similar circumstance does not demonstrate that an abuse of discretion has occurred.  
Manning v. State
, 114 S.W.3d 922, 926 (Tex. Crim. App. 2003).

Rule 403

Evidence is relevant when it has a tendency to make the existence of any fact more probable or less probable than it would have been without the evidence. 
 Tex. R. Evid. 
401.  Rule 403 allows for the exclusion of otherwise relevant evidence when its probative value is substantially outweighed by the danger of unfair prejudice.  
Tex. R. Evid. 
403; 
Shuffield v. State
, 189 S.W.3d 782, 787 (Tex. Crim. App.), 
cert. denied
, 127 S. Ct. 664 (2006).  The trial court is in a superior position to gauge the impact of relevant evidence in evaluating its determination under rule 403.  
See Mozon v. State
, 991 S.W.2d 841, 847 (Tex. Crim. App. 1999).

Rule 403 favors the admission of relevant evidence and carries a presumption that relevant evidence will be more probative than prejudicial.  
Shuffield
, 189 S.W.3d at 787.  A rule 403 analysis should include, but is not limited to, the following factors: how probative the evidence is; the potential of the evidence to impress the jury in some irrational, but nevertheless indelible way; the time the proponent needs to develop the evidence; and the proponent’s need for the evidence.  
Id
.  With regard to rule 403, the trial court is not required to conduct a separate hearing on the issue or to announce on the record its mental balancing of the “probative versus prejudice” factors.  
Luxton v. State
, 941 S.W.2d 339, 343 (Tex. App.—Fort Worth 1997, no pet.).  However, in reviewing the trial court’s 403 decision, we cannot merely conclude that “the trial judge did in fact conduct the required balancing and did not simply rule arbitrarily or capriciously.”  
Montgomery
, 810 S.W.2d at 392; 
see also Mozon
, 991 S.W.2d at 847.  Instead, we must measure the trial court’s ruling against the relevant criteria, listed above, by which a rule 403 decision is made.  
Mozon
, 991 S.W.2d at 847.

Appellant’s videotaped statement was highly relevant and probative to the State’s case in that Appellant confessed to his direct involvement in causing at least one of Williams’ stab wounds and to starting the fire in Williams’ bedroom.  
See Shuffield
, 189 S.W.3d at 787.  It also allowed the jury to compare Coleman’s testimony about what Appellant told him and the other evidence presented at trial with what Appellant told the police, and to infer Appellant’s consciousness of guilt.  While having the potential to impress the jury in some irrational, indelible way, the statement also had the potential to operate in Appellant’s favor, if the jury had chosen to believe his argument that the stabbing had been accidental.  
See id. 
 Portions of the videotape that were not pertinent to the case were redacted, so as to reduce the time needed for its presentation.  
See id.

After reviewing the balancing criteria in light of the relevant facts, we cannot say that the trial court’s decision was unreasonable.  
See Santellan
, 939 S.W.2d at 169.  And although Appellant now contends that he was “tricked” into making his statement, as discussed above with regard to his suppression motion, we have discerned no instance of trickery involved in the acquisition of the statement and Appellant has failed to direct us to any.  Appellant has failed to overcome the presumption that this relevant evidence was more probative than prejudicial.  Therefore, we conclude that the trial court did not abuse its discretion by overruling Appellant’s rule 403 objection with regard to the videotaped confession, and we overrule his fourth point.

CONCLUSION

Having overruled all of Appellant’s points, we affirm the judgment of the trial court.

DIXON W. HOLMAN

JUSTICE

PANEL B:  DAUPHINOT, HOLMAN, and MCCOY, JJ.

DO NOT PUBLISH

Tex. R. App. P.
 47.2(b)

DELIVERED:
  June 7, 2007

FOOTNOTES
1:
See
 
Tex. R. App. P. 
47.4.

2:
The knife was referred to as a “buck knife” or “pocket knife” throughout the trial testimony.  The knife itself, State’s exhibit 48, was admitted into evidence at trial.

3:
Williams owned a white Ford Econoline van with the license plate YLJ29V.

4:
The State elected not to seek the death penalty.

5:
While neither party moved for written findings of fact and conclusions of law, and none were filed, it is apparent from the record that the trial court intended for its findings and conclusions to be expressed via its oral pronouncements.  In reviewing a motion to suppress, oral findings of fact can be considered as findings of fact on the record and given due deference.  
State v. Cullen
, 195 S.W.3d 696, 699 (Tex. Crim. App. 2006) (stating that the trial court’s findings and conclusions from the suppression hearing need to be recorded in some way, whether written out and filed by the trial court, or stated on the record at the hearing); 
see also Flores v. State
, 177 S.W.3d 8, 13 (Tex. App.—Houston [1st Dist.] 2005, pet. ref’d) (reviewing trial court’s oral findings of fact on a motion to suppress), 
cert. denied
, 126 S. Ct. 2298 (2006).

6:
State’s Exhibit 2 is a copy of State’s Exhibit 1 with redaction of sound in parts that do not pertain to the capital murder case, such as Appellant’s mention, twice, that he had been in prison in California.

7:
Section 2(a)’s warnings to the accused are that:

(1) he has the right to remain silent and not make any statement at all and that any statement he makes may be used against him at his trial;

(2) any statement he makes may be used as evidence against him in court;

(3) he has the right to have a lawyer present to advise him prior to and during any questioning;

(4) if he is unable to employ a lawyer, he has the right to have a lawyer appointed to advise him prior to and during any questioning; and

(5) he has the right to terminate the interview at any time.

Tex. Code Crim. Proc. Ann. 
art. 38.22, § 2(a)(1)-(5).

8:
The videotape also included obtaining Appellant’s consent for DNA samples and taking those samples.

9:
To the contrary, on the videotape, the detectives asked Appellant if he needed anything during the interview.

10:
In his brief, Appellant alludes to “[t]rickery or deception,” and he argued during the suppression hearing that the detectives, although “extremely low key, . . . [were] using psychological coercion on [Appellant] to, in essence, coerce him to give a statement that he otherwise would not give.”  However, Appellant does not direct us to any evidence of such misconduct by the detectives during the interview.