TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-07-00561-CR







Carlos Quintanilla, Appellant



v.



The State of Texas, Appellee






FROM THE DISTRICT COURT OF CALDWELL COUNTY, 421ST JUDICIAL DISTRICT


NO. 2006-097, HONORABLE TODD BLOMERTH, JUDGE PRESIDING






O P I N I O N



A jury found appellant Carlos Quintanilla guilty of intoxication manslaughter and
assessed punishment at fourteen years in prison and a $10,000 fine. See Tex. Penal Code Ann.
§ 49.08 (West Supp. 2008). Appellant contends that the evidence is legally and factually insufficient
to sustain the guilty verdict because the State failed to prove that he caused the deceased's death. 
We find the evidence to be sufficient and affirm the conviction.


BACKGROUND


At 2:45 a.m. on April 19, 2000, off-duty Austin Police Officer Jim Beck was driving
south on highway 183 to his home in Lockhart when he was passed by a south-bound Ford Taurus
that Beck estimated was traveling at 80 to 85 miles-per-hour. As Beck followed the Taurus, he saw
it alternately speed up, slow down, and swerve between the traffic lanes. Beck testified that he saw
two persons in the Taurus, a male driver and a female passenger. Beck lost sight of the Taurus when
it crested a hill just outside Lockhart. When Beck, who was about 200 yards behind, reached the top
of this hill, the Taurus was not to be seen. Beck stopped, turned, and began to drive north. He soon
spotted the Taurus in a ditch on the east side of the highway, where it had left the road after crossing
the north-bound lanes.

Beck found appellant lying on the ground beside the Taurus's open driver's door. A
woman identified as Mary Parlin was in the passenger seat. Both appellant and Parlin were
obviously injured, but Beck could tell from the sounds she was making that Parlin's injuries were
more serious. It was later determined that both appellant and Parlin were intoxicated.

Appellant and Parlin were taken by helicopter to Brackenridge Hospital in Austin. 
Dr. James Kempema was one of the physicians who treated Parlin in the emergency room. 
Kempema testified that when Parlin arrived at the hospital, her heart rate was elevated and her blood
pressure was low, indicating that she was bleeding internally. Efforts to elevate Parlin's blood
pressure by giving her fluids intravenously were unsuccessful, and she developed an abnormal heart
rhythm and then lapsed into pulseless electrical activity. The doctor described this condition as
"electrical activity on the cardiac monitor . . . [but] there are no pulses that we can palpate in any of
the typical areas that we feel pulses . . . which means that either the blood pressure is unacceptably
low or the heart is simply not pumping." Kempema testified that Parlin would have died within
minutes without further action. Using CPR and cardiac stimulating drugs, emergency room
personnel were able to restore Parlin's heart beat and stabilize her condition.

Kempema testified that as a result of the accident, Parlin sustained severe brain
trauma, facial fractures, a pelvic fracture, two broken femurs, and a collapsed lung. She was in a
deep coma. She could not talk, her eyes were non-responsive, and her only motor ability was
posturing, "which is essentially a very primitive brain stem reflex that results from severe brain
trauma." 

Parlin remained in the hospital until May 26, 2000, when she was transferred to a
nursing home. She entered a different nursing home on July 31, 2000. Records from the second
nursing home introduced in evidence show that Parlin was in a semicomatose state throughout her
stay in the facility. She was unable to speak and most of her movements were involuntary, but she
had some voluntary movement and could respond to her name and to simple commands. At first,
Parlin was able to sit in a Gerichair and was taken to group activities, but she became increasingly
bedridden over time. Parlin was fed through a gastrostomy tube. She also had a permanent
tracheostomy tube, and she sometimes required additional oxygen through the tube. There are
references throughout the records to lung congestion and thick discharges from the tracheostomy
tube. Parlin's brother, Kevin Parlin, testified that she was in a vegetative state in the nursing home,
unable to communicate, and that she manifested only involuntary movements. He said that Parlin
was on a breathing machine "some of the time." 

There is little evidence regarding the circumstances of Parlin's death. A nurse's note
states that EMS was called to the nursing home on October 26, 2002, and Parlin was transferred to
a hospital. (1) The note indicates that a quantity of fluid had been suctioned from the tracheostomy tube
and that Parlin's skin was "clammy and pale." A nurse's note dated November 2, 2002, states that
Parlin's mother had called the nursing home to say that "the decision has been made to stop all
treatment in the hospital and that she will not be coming back . . . ." Kevin Parlin was asked by the
prosecutor, "[D]id your mother and your family have to make the decision to turn off the life support
machine?" He answered, "Yes." Parlin died in the hospital on November 3, 2002. The death
certificate, introduced in evidence, states that the immediate cause of death was right lung empyema
due to a chronic vegetative state that was the result of a closed head injury. (2) The death certificate
states that Parlin had been suffering from the empyema for months.


DISCUSSION


A person commits intoxication manslaughter if he operates a motor vehicle in a
public place while intoxicated, and by reason of that intoxication he causes the death of another by
accident or mistake. Id. § 49.08(a). At trial, appellant's defense was that he was not operating the
Taurus. Appellant testified that Parlin was driving the car, which belonged to her, and he was the
passenger. On appeal, however, appellant does not deny that he was operating the vehicle. Instead,
he contends that the State failed to prove, either legally or factually, that his intoxicated operation
of the vehicle and the resulting accident caused Parlin's death.


Legal Sufficiency

When there is a challenge to the sufficiency of the evidence to sustain a criminal
conviction, the question presented is whether a rational trier of fact could have found the essential
elements of the offense beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 324 (1979); 
Clayton v. State, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007); Johnson v. State, 23 S.W.3d 1, 11
(Tex. Crim. App. 2000). In a legal sufficiency review, all the evidence is reviewed in the light most
favorable to the verdict, and it is assumed that the trier of fact resolved conflicts in the testimony,
weighed the evidence, and drew reasonable inferences in a manner that supports the verdict. 
Clayton, 234 S.W.3d at 778. 

In Texas, the law of criminal causation as it relates to the defendant's conduct is as
follows:


A person is criminally responsible if the result would not have occurred but
for his conduct, operating either alone or concurrently with another cause, unless the
concurrent cause was clearly sufficient to produce the result and the conduct of the
actor clearly insufficient.



Tex. Penal Code Ann. § 6.04(a) (West 2003). The statute has two parts or prongs: (1) the general
rule of causation--"A person is criminally responsible if the result would not have occurred but for
his conduct, operating either alone or concurrently with another cause," and (2) the exception to the
rule when there is a concurrent cause--"unless the concurrent cause was clearly sufficient to produce
the result and the conduct of the actor clearly insufficient." See Remsburg v. State, 219 S.W.3d 541,
545 (Tex. App.--Texarkana 2007, pet. ref'd). The concurrent cause exception presupposes that the
result would not have occurred but for the actor's conduct. If the actor's conduct was not a cause
of the result under the general rule, it could not be a concurrent cause to which the exception
might apply.

Appellant's challenge to the sufficiency of the evidence invokes both prongs of
section 6.04(a). First, appellant contends that the State failed to prove that Parlin's death would not
have occurred but for his conduct. This argument, in effect, asserts that appellant's conduct was not
shown to be a cause of Parlin's death under the general rule. Second, appellant contends that the
evidence fails to show that his conduct was alone sufficient to cause Parlin's death. By this
argument, which invokes the concurrent cause exception, appellant asserts that the lung empyema
and the family's decision to discontinue life support were clearly sufficient to cause Parlin's death
and that his conduct was clearly insufficient.

Appellant contends that, on this record, Parlin's death was caused by her lung
infection combined with the family's decision to discontinue efforts to artificially prolong her life. 
Neither of these causes of death, appellant argues, was shown to have resulted from his conduct. In
appellant's view, they were independent causes of death having no but-for relationship to his conduct
or to the automobile accident.

Contrary to appellant's assertion, the State proved that the fatal lung empyema was
a result of his conduct. The "cause of death" section of the death certificate, which is obviously a
prescribed form, instructs the certifier to first enter the "IMMEDIATE CAUSE (Final disease or
condition resulting in death)," and then to "[s]equentially list conditions, if any, leading to immediate
cause. Enter UNDERLYING CAUSE (disease or injury that initiated events resulting in death)
LAST." The doctor who certified Parlin's death entered "Right lung empyema" as the immediate
cause of death, "Chronic vegetative state" as the condition leading to the immediate cause, and
"Closed head injury" as the underlying cause. The death certificate states that the right lung
empyema was "due to (or . . . a likely consequence of)" the chronic vegetative state, and that the
chronic vegetative state was "due to (or . . . a likely consequence of)" the closed head injury.

The emergency room physician testified that severe brain trauma was one of the many
injuries Parlin sustained in the accident. This testimony and the death certificate create an unbroken
chain of causation from appellant's conduct and the resulting automobile accident, to the brain
trauma and coma, to the chronic vegetative state, to the lung empyema and death. Viewed in the
light most favorable to the verdict, the evidence is sufficient to support a finding that the fatal lung
empyema would not have occurred but for appellant's conduct. See Jones v. State, 582 S.W.2d 129,
133-34 (Tex. Crim. App. 1979) (holding that defendant was criminally responsible for death
resulting from complications arising out of injuries inflicted by defendant); Barrera v. State,
756 S.W.2d 884, 885 (Tex. App.--San Antonio 1988, pet. ref'd) (same). 

The record also contradicts appellant's assertion that the decision to discontinue
Parlin's life support was an independent cause of death unrelated to his conduct. Dr. Kempema, the
emergency physician, was asked by the prosecutor "if a decision had to be made at a future time by
the family to turn off the life support, and she died, was the cause of death from these injuries
received in this motor vehicle accident?" The doctor answered, "I can comment to the extent to say
that she was put on life support as a result of the injuries she sustained because of the injuries in the
accident." Parlin might not have died when she did had the family not elected to discontinue
treatment aimed at prolonging her life, but she also would not have died when and in the manner she
did but for the injuries she sustained as a result of appellant's conduct, the injuries that left her in a
coma, resulted in the development of the fatal lung empyema, and forced her family to make its
difficult decision. See Felder v. State, 848 S.W.2d 85, 89-90 (Tex. Crim. App. 1992). (3) Viewing the
evidence in the light most favorable to the verdict, the family's decision to stop further life support
measures was at most a concurrent cause of Parlin's death, not an alternative cause that resulted in
her death independent of appellant's conduct. See Barnette v. State, 709 S.W.2d 650, 651 (Tex.
Crim. App. 1986) (distinguishing between concurrent causation and alternative causation).

We now turn to appellant's contention that the State failed to prove that his conduct
was alone sufficient to cause Parlin's death. Appellant urges that, on this record, the lung empyema
and the discontinuance of life support were concurrent causes of death clearly sufficient to cause
Parlin's death and that his conduct was clearly insufficient.

This argument is also contradicted by the record. Kempema testified that Parlin
would have died in the emergency room if not for the extraordinary resuscitative efforts of the
emergency medical team. Viewed in the light most favorable to the verdict, this evidence supports
a finding beyond a reasonable doubt that appellant's conduct was sufficient in itself to cause Parlin's
death. See Thompson v. State, 93 S.W.3d 16, 20-21 (Tex. Crim. App. 2001) (holding that
defendant's conduct was not "clearly insufficient" to cause victim's death in light of evidence
showing that without medical intervention, injuries inflicted by defendant could have been fatal). 
Although medical intervention may have succeeded in delaying Parlin's death, and even if the lung
empyema and the discontinuance of life support were concurrent causes sufficient to result in
her death, the evidence shows that Parlin would not have developed the empyema or required
life support but for appellant's conduct. Appellant's conduct was not "clearly insufficient"
to cause Parlin's death within the meaning of the concurrent cause exception. See Felder,
848 S.W.2d at 90 n.1.

The evidence is legally sufficient to prove that, by his conduct, appellant was
criminally responsible for Parlin's death. Point of error one is overruled.


Factual Sufficiency

In a factual sufficiency review, all the evidence is considered equally, including the
testimony of defense witnesses and the existence of alternative hypotheses. Clewis v. State,
922 S.W.2d 126, 129 (Tex. Crim. App. 1996); Orona v. State, 836 S.W.2d 319, 321
(Tex. App.--Austin 1992, no pet.). Although due deference still must be accorded the fact finder's
determinations, particularly those concerning the weight and credibility of the evidence, the
reviewing court may disagree with the result in order to prevent a manifest injustice. Johnson,
23 S.W.3d at 9; Cain v. State, 958 S.W.2d 404, 407 (Tex. Crim. App. 1997). The evidence will be
deemed factually insufficient if the evidence supporting the verdict is so weak as to make the finding
of guilt clearly wrong or manifestly unjust, or if the verdict is against the great weight and
preponderance of the available evidence. Watson v. State, 204 S.W.3d 404, 414-15 (Tex. Crim.
App. 2006); Johnson, 23 S.W.3d at 11.

Appellant's arguments in support of his factual insufficiency claim are essentially
restatements of the arguments he made in support of his legal insufficiency claim, with the caveat
that "[a]ny evidence which could somehow be seen as legally sufficient to support a rational jury's
conclusion [that he caused Parlin's death] is nevertheless so weak that the Court's confidence in the
jury's verdict should be undermined." We have already explained how, contrary to appellant's
arguments, the evidence rationally supports both a finding that Parlin would not have died but for
appellant's conduct and a finding that appellant's conduct was in itself sufficient to cause Parlin's
death, even if the other factors cited by appellant also contributed to that result. Moreover, the only
link in the chain of causation from the automobile accident to Parlin's death that was disputed at trial
was appellant's role as the driver of the car, a fact that was resolved against him by the jury and that
he essentially concedes on appeal. Even when viewed in a neutral light, the evidence supporting the
conclusion that appellant's conduct caused Parlin's death is neither so weak nor so against the great
weight of the available evidence as to make the conclusion clearly wrong or manifestly unjust.

The evidence is factually sufficient to prove that, by his conduct, appellant was
criminally responsible for Parlin's death. Point of error two is overruled.

The judgment of conviction is affirmed.



 __________________________________________

 J. Woodfin Jones, Chief Justice

Before Chief Justice Jones, Justices Puryear and Henson

Affirmed

Filed: July 14, 2009

Publish 
1. No records from this hospitalization were introduced in evidence.
2. Empyema is defined as the presence of pus in a bodily cavity (as in the pleural cavity). 
Webster's International Dictionary 744 (3d ed. 1986). 
3. In Felder, the defendant stabbed the deceased in the head with a pair of scissors, and the
medical examiner testified that this wound was the cause of death. 848 S.W.2d at 89. Although
brain dead, the deceased was temporarily placed on a life support system and his organs continued
to function. Id. The court rejected the defendant's contention that it was the removal of the life
support system, and not his conduct, that caused the deceased's death, reasoning that but for the
defendant's actions, the deceased would not have been on life support and would not have died when
that support was removed. Id. at 90. Parlin was not shown to be brain dead when life support was
discontinued, but the same principle applies here. But for appellant's conduct, Parlin would not have
required life support or developed the lung empyema that was the immediate cause of her death.