

NUMBER 13-12-00626-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

DEVRY RESENDEZ, **Appellant,**

**v.**

THE STATE OF TEXAS, **Appellee.**

**On appeal from the 214th District Court
of Nueces County, Texas.**

# MEMORANDUM OPINION

**Before Chief Justice Valdez and Justices Rodriguez and Garza
Memorandum Opinion by Justice Garza**

A jury convicted appellant, Devry Resendez, of one count of intoxication manslaughter, a second-degree felony, *see* TEX. PENAL CODE ANN. § 49.08 (West 2011), one count of intoxication assault, a third-degree felony, *see id.* § 49.07 (West 2011),

and two counts of failure to stop and render assistance (FSRA), each a third-degree felony. *See* TEX. TRANSP. CODE ANN. §§ 550.021(a), (c)(1) & 55.023 (West 2011). Punishment was assessed at eight years' imprisonment and a $10,000 fine on the manslaughter count, a five-year suspended sentence and a $5,000 fine on the assault count, four years' imprisonment and a $5,000 fine on one of the FSRA counts, and a two-year suspended sentence and a $5,000 fine on the second FSRA count.[1] By four issues, appellant challenges the sufficiency of the evidence to support her convictions. We affirm.

## I. BACKGROUND

The evidence admitted at trial showed that, around midnight on September 4, 2011, appellant was driving eastbound in the middle lane of South Padre Island Drive (SPID) in Corpus Christi, Texas, at a speed of approximately 102 miles per hour when she rear-ended a Toyota Camry driven by Roxann Munguia. Munguia's seventy-year-old aunt, Carmen Cantu, was in the passenger's seat of the Camry. The collision caused the Camry to spin, strike the concrete barrier between eastbound and westbound traffic, and stop in the far left passing lane facing in the direction of oncoming traffic. Appellant's vehicle exited the SPID freeway at the Airline exit and came to a stop at the light at the access road intersection.

A few moments later, Rosalinda and Ricardo Ramirez were also traveling eastbound on SPID, saw the debris on the highway, and exited the freeway. Ricardo, the passenger, saw Munguia exiting the disabled Camry in the left lane of the freeway. The Ramirezes turned under the freeway and returned to the accident site. As they

---

[1] On each of the suspended sentences, appellant was placed on community supervision for ten years. The sentences that were not suspended were ordered to run concurrently.

exited the freeway, they noticed appellant sitting inside her vehicle, with damage to its front end, at the access road intersection light.

Ricardo reached the Camry, which was partially obstructing the far-left and middle lanes and was facing oncoming eastbound traffic. Neither its headlights nor its hazard lights were on. As Ricardo reached Munguia, he pulled her away from the Camry toward the concrete barrier just as a vehicle driven by Thomas Wallin collided head-on with the Camry, causing it to strike the barrier again before stopping, still facing the wrong direction. After the second collision, Munguia expressed concern for Cantu. Ricardo did not see anyone inside the car, but found Cantu lying face down on the freeway near the rear of the Camry. Cantu died of her injuries.

The evidence was inconclusive regarding how Cantu's body left the vehicle. Munguia testified that after the first collision, Cantu was alive and talking. She testified that Cantu was still in the vehicle when the second collision occurred and that Cantu was ejected in the second collision. Ricardo Ramirez testified that when he pulled Munguia out of the way, he did not see Cantu outside the vehicle. Another witness, Javier Cano, testified that he saw a man (presumably Ramirez) assisting a woman, but did not see anyone else outside the vehicle. Only one witness, Glen Steed, testified that, as he approached Munguia's vehicle, he saw two women outside the vehicle. The evidence showed that the rear window of Munguia's vehicle was destroyed in the first collision. Brian David Charles, appellant's accident reconstruction expert, testified that the passenger side door was open when the second collision occurred.

Shortly after 1:00 a.m., Corpus Christi police officer Raul Ramirez was dispatched to the scene of the accident. Officer Ramirez questioned appellant and

3

noticed the damage to her vehicle. Appellant's speech was slurred, her eyes were bloodshot, and she had a strong smell of alcohol on her breath. Officer Ramirez arrested appellant on suspicion of driving while intoxicated. Appellant consented to providing a blood sample, which was given at 2:25 a.m. The blood sample was later determined to contain 0.20 grams of alcohol per hundred milliliters of blood.

In her first and second issues, appellant challenges the causation element of the manslaughter and assault offenses. Specifically, she argues that there is no evidence that her intoxication caused Cantu's death or Munguia's injuries because the second collision—Wallin's collision with the Camry—was an intervening factor that caused Cantu's death and Munguia's injuries.

## II. STANDARD OF REVIEW AND APPLICABLE LAW

In reviewing the sufficiency of evidence supporting a conviction, we consider the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Hacker v. State*, 389 S.W.3d 860, 865 (Tex. Crim. App. 2013); *see Brooks v. State*, 323 S.W.3d 893, 895 (Tex. Crim. App. 2010) (plurality op.) (citing *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). The fact-finder is the exclusive judge of the credibility of witnesses and of the weight to be given to their testimony. *Anderson v. State*, 322 S.W.3d 401, 405 (Tex. App.—Houston [14th Dist.] 2010, pet. ref'd) (citing *Lancon v. State*, 253 S.W.3d 699, 707 (Tex. Crim. App. 2008)). Reconciliation of conflicts in the evidence is within the fact-finder's exclusive province. *Id.* (citing *Wyatt v. State*, 23 S.W.3d 18, 30 (Tex. Crim. App. 2000)). We must resolve any inconsistencies in the testimony in favor of the verdict. *Id.* (citing *Curry v. State*, 30 S.W.3d 394, 406

4

(Tex. Crim. App. 2000)).

Sufficiency of the evidence is measured by the elements of the offense as defined by a hypothetically correct jury charge. *Byrd v. State*, 336 S.W.3d 242, 246 (Tex. Crim. App. 2011); *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997). Such a charge is one that accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried. *Byrd*, 336 S.W.3d at 246; *Malik*, 953 S.W.2d at 240.

To establish the intoxication manslaughter offense, the State was required to prove: (1) appellant (2) operated a motor vehicle in a public place (3) while intoxicated, and (4) by reason of that intoxication, caused the death of Cantu by accident or mistake. TEX. PENAL CODE ANN. § 49.08(a); *see Glauser v. State*, 66 S.W.3d 307, 313 (Tex. App.—Houston [1st Dist.] 2000, pet. ref'd). The State was required to prove that appellant's intoxication, and not just her operation of a vehicle, caused the fatal result. *See Wooten v. State*, 267 S.W.3d 289, 295 (Tex. App.—Houston [14th Dist.] 2008, pet. ref'd); *Glauser*, 66 S.W.3d at 313.

To establish the intoxication assault offense, the State was required to prove: (1) appellant, (2) by accident or mistake, (3) while operating a motor vehicle (4) in a public place (5) while intoxicated, (6) by reason of that intoxication, caused serious bodily injury to Munguia. *See* TEX. PENAL CODE ANN. § 49.07(a)(1); *Ex parte Watson*, 306 S.W.3d 259, 263 (Tex. Crim. App. 2009).

Texas courts have listed the elements for the offense of failure to stop and render aid as follows: (1) an operator of a vehicle; (2) intentionally or knowingly; (3) involved in

5

an accident; (4) resulting in personal injury or death; (5) fails to stop and render reasonable assistance. *St. Clair v. State*, 26 S.W.3d 89, 98 (Tex. App.—Waco 2000, pet. ref'd); *see* TEX. TRANSP. CODE ANN. §§ 550.021, 550.023 (West 2011).[2] Section 550.021 plainly provides that the offense is committed if a vehicle operator involved in an accident resulting in injury or death "does not stop *or* does not comply with the requirements of [subsection (a) or section 550.023]." TEX. TRANSP. CODE ANN. §

---

[2] Section 550.021 of the transportation code provides in relevant part:

(a)  The operator of a vehicle involved in an accident resulting in injury to or death of a person shall:

(1) immediately stop the vehicle at the scene of the accident or as close to the scene as possible;

(2) immediately return to the scene of the accident if the vehicle is not stopped at the scene of the accident; and

(3) remain at the scene of the accident until the operator complies with the requirements of Section 550.023.

(b)  An operator of a vehicle required to stop the vehicle by Subsection (a) shall do so without obstructing traffic more than is necessary.

(c)  A person commits an offense if the person does not stop or does not comply with the requirements of this section.

TEX. TRANSP. CODE ANN. § 550.021 (West 2011); *see Huffman v. State*, 267 S.W.3d 902, 907–08 (Tex. Crim. App. 2008). Section 550.023 of the transportation code, entitled "Duty to Give Information and Render Aid," provides:

The operator of a vehicle involved in an accident resulting in the injury or death of a person or damage to a vehicle that is driven or attended by a person shall:

(1)  give the operator's name and address, the registration number of the vehicle the operator was driving, and the name of the operator's motor vehicle liability insurer to any person injured or the operator or occupant of or person attending a vehicle involved in the collision;

(2)  if requested and available, show the operator's driver's license to a person described by Subdivision (1); and

(3)  provide any person injured in the accident reasonable assistance, including transporting or making arrangements for transporting the person to a physician or hospital for medical treatment if it is apparent that treatment is necessary, or if the injured person requests the transportation.

TEX. TRANSP. CODE ANN. § 550.023 (West 2011).

550.021(c) (emphasis added); *St. Clair*, 26 S.W.3d at 99.

Thus, the fifth element can be satisfied by proof that an operator of a vehicle knowingly involved in an accident involving injury or death:

(1)  failed to immediately stop his vehicle at the scene or as close to the scene as possible;

(2)  failed to immediately return to the scene if he did not stop there; or

(3)  failed to remain at the scene until he had:

   (a)  given his name and address, the registration number of his vehicle, and the name of his liability insurer to any others involved in the collision;

   (b)  shown his driver's license to anyone involved in the collision, if requested; or

   (c)  provided any person injured in the accident reasonable assistance, including transporting or making arrangements for transporting the person to a physician or hospital for medical treatment if it was apparent that treatment was necessary, or if the injured person requested transportation.

*St. Clair*, 26 S.W.3d at 99; *see* TEX. TRANSP. CODE ANN. §§ 550.021(a), (c), 550.023.

Here, with respect to the first count of FSRA, the indictment alleged that (1) appellant, (2) intentionally or knowingly (3) was involved in an accident (4) resulting in the death of Cantu, and (5) failed to remain at the scene and give information or render reasonable assistance. As to the second count of FSRA, the indictment alleged that (1) appellant, (2) intentionally or knowingly (3) was involved in an accident (4) resulting in serious bodily injury to Munguia, (5) failed to remain at the scene and give information or render reasonable assistance. "When an indictment alleges alternative means for the commission of an offense, the conviction will stand if the evidence supports any of the theories alleged." *St. Clair*, 26 S.W.3d at 99.

In Texas, the law of criminal causation as it relates to the defendant's conduct is

7

as follows: "A person is criminally responsible if the result would not have occurred but for his conduct, operating either alone or concurrently with another cause, unless the concurrent cause was clearly sufficient to produce the result and the conduct of the actor clearly insufficient." TEX. PENAL CODE ANN. § 6.04(a). In other words, "but for" causation, as referred to in section 6.04(a), "must be established between an accused's conduct and the resulting harm." *Wooten*, 267 S.W.3d at 296; *see Robbins v. State*, 717 S.W.2d 348, 351 (Tex. Crim. App.1986). "When concurrent causes are present, the 'but for' requirement is satisfied when either[:] (1) the accused's conduct is sufficient by itself to have caused the harm; or (2) the accused's conduct coupled with another cause is sufficient to have caused the harm." *Wooten*, 267 S.W.3d at 296. "Section 6.04(a) limits the 'but for' causality by providing that the defendant cannot be convicted if the additional cause, other than defendant's conduct, is clearly sufficient by itself to produce the result, and the defendant's conduct by itself is clearly insufficient to produce the result." *Bell v. State,* 169 S.W.3d 384, 395 (Tex. App.—Fort Worth 2005, pet. ref'd) (citing *Robbins*, 717 S.W.2d at 351). The State may rely on circumstantial evidence to establish a causal connection. *See Wooten*, 267 S.W.3d at 296.

### III. DISCUSSION

#### A. Intoxication Manslaughter

By her first issue, appellant argues that there is no evidence that her intoxication caused a collision that resulted in Cantu's death because "there was another intervening factor which caused another collision which resulted in the death of Carmen Cantu." Appellant's argument consists of the following:

> A concurrent causation question arises only when more than appellant's conduct another cause [sic] in addition to appellant's conduct

8

is in issue. Looking at the evidence again, we note that there was at least 7 minutes that elapsed from the first collision to the second collision. We also note that there was traffic on the freeway during this seven minute period. We further note that a witness, Javier Cano[,] was able to avoid the first collision. We can surmise that other drivers along the freeway during the intervening seven minutes were able to avoid a second collision. We can further conclude that Thomas Wallin, the driver involved in the second collision, should have been able to avoid causing the second collision in which the victim, Carmen Cantu[,] was killed.

(Citation omitted.) Appellant appears to argue that, because seven minutes elapsed between the first collision and the second, and other drivers were able to avoid hitting the disabled Camry, Wallin's collision with the Camry was the sole independent cause of Cantu's death and appellant's intoxication was therefore "clearly insufficient" to cause the death. We disagree.

The State was required to prove that appellant's intoxication, not just her operation of a vehicle, caused Cantu's death. *See Glauser*, 66 S.W.3d at 313. David Conner, a collision investigator with the Corpus Christi Police Department, testified that the data recorder in appellant's vehicle showed that, at the time of the collision with Munguia's vehicle, appellant was speeding at 102 miles per hour and did not brake before the collision. It was undisputed that a blood test showed that appellant's blood alcohol content was 0.20 and she was therefore intoxicated at the time of the collision. Appellant is criminally responsible if Cantu's death would not have occurred but for appellant's intoxication, operating either alone or concurrently with Wallin's collision, unless Wallin's conduct was clearly sufficient to produce Cantu's death and appellant's intoxication was clearly insufficient. *See* TEX. PENAL CODE ANN § 6.04(a); *Hale v. State*, 194 S.W.3d 39, 43 (Tex. App.—Texarkana 2006, no pet.).

9

Officer Conner testified that Wallin's vehicle was traveling at fifty-eight miles per hour one second prior to impact with Munguia's vehicle. Wallin applied the brakes one second before the collision. Wallin testified that he saw the silhouette of Munguia's vehicle "milliseconds" before he crashed into it. He testified that he swerved at the last second, but did not have time to change lanes to avoid the collision, and that the collision was "unavoidable." John Elliott, a Corpus Christi police officer that investigated the accident, testified that based on his investigation and the evidence, there was nothing Wallin could have done to avoid hitting Munguia's stalled vehicle. Another investigating officer, Corpus Christi police officer Carl Knapnick, testified that the second collision would not have occurred if appellant had not initially struck Munguia's vehicle leaving it disabled and facing the wrong direction on the highway. One of appellant's witnesses, Steed, testified that when he came upon Munguia's disabled vehicle, there was "zero time" to avoid hitting it and that he avoided a collision only because he was able to swerve and "use the full freeway" to avoid a collision. He testified that Wallin's vehicle was in the far left lane and that Wallin could not have avoided hitting Munguia's vehicle. We conclude that this evidence established that Cantu's death would not have occurred but for appellant's intoxication operating concurrently with Wallin's conduct in driving on the freeway and colliding with Munguia's vehicle. *See* TEX. PENAL CODE ANN. § 6.04(a).

Having found that the "but for" requirement is satisfied, we turn to whether the limitation in section 6.04(a) is applicable. Under the limitation, appellant cannot be convicted if the additional cause, other than her conduct, is clearly sufficient by itself to produce the result, and her conduct by itself is clearly insufficient to produce the result.

10

*See id.*; *Bell*, 169 S.W.3d at 395. Here, we cannot say that appellant's conduct by itself was clearly insufficient to have produced the result. Appellant's intoxication and her collision with Munguia's vehicle was sufficient by itself to have caused Cantu's death. *See* TEX. PENAL CODE ANN. § 6.04(a); *Bell*, 169 S.W.3d at 395. Officer Conner testified that the "Delta V force" of appellant's vehicle rear-ending Munguia's vehicle was 21.[3] The "Delta V force" of the second collision was 30.5. Officer Conner explained that although a higher "Delta V force" usually results in a death, a person can be killed in an impact with a "Delta V force" of 5. Dr. Ray Fernandez, the medical examiner for Nueces County, testified that Cantu died from multiple blunt force injuries. Cantu's injuries were consistent with being ejected from the Camry in the second collision, but were also consistent with having been injured while inside the vehicle or outside of it. Dr. Fernandez testified that he could not ascertain which injuries occurred inside the vehicle and which may have occurred outside the vehicle. We conclude that appellant's intoxication while driving at 102 miles per hour cannot be characterized as clearly insufficient to produce Cantu's death. Therefore, the limitation in section 6.04(a) is not applicable.

We hold that a fact finder reasonably could have found beyond a reasonable doubt that Cantu's death would not have occurred but for appellant's intoxication. *See id.* Viewing the evidence in the light most favorable to the verdict, Wallin's conduct constituted at most a concurrent cause of Cantu's death, not an alternative cause that resulted in Cantu's death independent of appellant's conduct. Viewed in the light most favorable to the verdict, the evidence supports a finding beyond a reasonable doubt that

---

[3] Officer Conner explained that the "Delta V force" is "the amount of momentum that the vehicle lost once it came in contact with the other vehicle in miles per hour."

11

appellant's conduct was sufficient in itself to cause Cantu's death within the meaning of the concurrent-cause exception. *See* Tex. Penal Code Ann. § 6.04(a); *Quintanilla v. State*, 292 S.W.3d 230, 235–36 (Tex. App.—Austin 2009, pet. ref'd) (finding appellant's conduct was not "clearly insufficient" to cause victim's death where evidence showed that victim would not have developed lung empyema or required life support but for appellant's conduct); *Wooten*, 267 S.W.3d at 296 (finding that, but for appellant's intoxication, the complainants' deaths would not have occurred even though appellant claimed to have swerved to avoid colliding with a motorcycle, which he alleged broke any chain of causation). We overrule appellant's first issue.

## B. Intoxication Assault

By her second issue, appellant contends the evidence is insufficient to support her conviction for intoxication assault. Specifically, appellant attacks the sufficiency of the evidence that her intoxication caused Munguia's injuries because she argues that Munguia's injuries were sustained in the second collision, not the first. Relying on "the same argument and criteria" discussed in her first issue, appellant argues that Wallin's vehicle caused the assault on Munguia.

Appellant relies on Ricardo Ramirez's testimony that, when he pulled Munguia out of the way of the second collision, Munguia's head hit the concrete barrier. However, Munguia testified that she sustained the cut to her head—which required twelve staples—during the first collision. As a result of the second collision, she sustained injury to her hip and a broken toe. "Reconciliation of conflicts in the evidence is within the fact-finder's exclusive province." *Anderson*, 322 S.W.3d at 405. Moreover, for the same reasons discussed above, we hold that a fact finder could have found

12

beyond a reasonable doubt that Munguia's injuries would not have occurred but for appellant's intoxication. *See* TEX. PENAL CODE ANN. § 6.04(a). Wallin's conduct constituted at most a concurrent cause of Munguia's injuries, not an alternative cause that resulted in Munguia's injuries independent of appellant's conduct. Viewed in the light most favorable to the verdict, the evidence supports a finding beyond a reasonable doubt that appellant's conduct was sufficient in itself to cause Munguia's injuries within the meaning of the concurrent-cause exception. *See id.* We overrule appellant's second issue.

## C. Failure to Stop and Render Aid

By her third and fourth issues, appellant contends the evidence is insufficient to support her convictions for failure to stop and render assistance to Munguia and Cantu. Specifically, appellant argues that there is "no evidence" that she was still in control of her vehicle after the accident or that she left the scene of the accident voluntarily. Appellant relies on testimony by Charles that her vehicle could have coasted off the exit ramp to its position at the intersection.

Here, the indictment alleged in both counts that appellant failed to remain at the scene and give information or render reasonable assistance. Thus, the State was required to show that, knowing that an accident had occurred,[4] appellant either (1) failed to remain at the scene and provide required information, *see* TEX. TRANSP. CODE ANN. §§ 550.021(a)(3), 550.023(1)(2), or (2) failed to remain at the scene and provide reasonable assistance to Munguia or Cantu when it was apparent that they needed medical treatment. *See id.* §§ 550.021(a)(3), 550.023(3).

_____

[4] To satisfy the culpable mental state requirement, the State was required to show that appellant had knowledge of the circumstances surrounding her conduct, i.e., had knowledge that an accident had occurred. *St. Clair v. State*, 26 S.W.3d 89, 98 (Tex. App.—Waco 2000, pet. ref'd).

13

Munguia testified that when appellant's vehicle struck hers, it did not stop and she saw it exit at the Airline exit. Rosalinda Ramirez testified that when she and Ricardo exited at the Airline exit to turn around and assist Munguia, they saw appellant sitting in her vehicle at the intersection of the access road and Airline. Appellant was adjusting her mirror and trying to start her vehicle and looked like she was "trying to leave." Appellant was not pulled over, but was first in line at the light. Similarly, Ricardo testified that when they pulled up to the intersection in the left-turn lane, appellant, who was in the next lane over that goes through the intersection, was trying to start her vehicle. Officer Ramirez testified that when he first arrived at appellant's vehicle, she was in the left-hand through lane and was "trying to drive away." When Officer Ramirez first asked appellant what had happened, she said she did not know. After a second question, appellant admitted she had been involved in an accident on the freeway. On cross-examination, Officer Ramirez clarified that he was not saying that appellant was trying to get away. On redirect examination, Officer Ramirez stated that when he first approached appellant, she said she had not been involved in an accident, but then "changed her mind" and "remembered that she was." Appellant did not tell Officer Ramirez that anyone else may have needed help as a result of the accident. Officer Knapnick testified that when he first questioned appellant in her vehicle at the intersection, she said she was on the access road because she had hit another car, but that it had left the scene. Officer Conner testified that the data recorder system on appellant's vehicle showed that someone had attempted to start the engine nine times after the collision.

14

Charles testified that the location of appellant's vehicle at the intersection 2500 feet away from the collision could have occurred without the vehicle being "controlled." According to Charles, appellant could have coasted down the Airline exit ramp going about 60 miles per hour and could have come to a stop at the intersection. On cross-examination, however, Charles acknowledged that if appellant's vehicle had simply coasted down the exit ramp, it would have hit a curb; therefore, she must have steered it into the through lane where it came to rest.

Viewed in the light most favorable to the verdict, the evidence supports a finding beyond a reasonable doubt that, knowing she had been involved in an accident, appellant failed to remain at the scene and provide the required information, *see St. Clair,* 26 S.w.3d at 98–99; TEX. TRANSP. CODE ANN. §§ 550.021(a)(3), 550.023(1)(2), and also failed to remain at the scene and provide reasonable assistance to Munguia or Cantu. *See St. Clair,* 26 S.W.3d at 98–99; TEX. TRANSP. CODE ANN. §§ 550.021(a)(3), 550.023(3). We overrule appellant's third and fourth issues.

## IV. CONCLUSION

We affirm the trial court's judgment.

_____
DORI CONTRERAS GARZA
Justice

Do not publish.
TEX. R. APP. P. 47.2(b).

Delivered and filed the
17th day of October, 2013.

15